**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 12-2434
_____

UNITED STATES OF AMERICA

v.

MICHAEL STRAUSBAUGH,

Appellant

_____

On Appeal from the United States District Court
for the Middle District of Pennsylvania
(District Court No. 1-11-cr-00096-001)
District Judge:  Honorable William W. Caldwell

_____

Submitted under Third Circuit LAR 34.1(a)
on July 15, 2013

(Filed:  August 9, 2013)

Before:  RENDELL, SMITH and ROTH, Circuit Judges

_____

O P I N I O N

_____

**RENDELL**, Circuit Judge:

On October 26, 2011, after a three-day bench trial, Defendant Michael

Strausbaugh was found guilty of offenses involving the sexual exploitation of a child and

distribution and possession of child pornography. After he was sentenced on May 8, 2012, Strausbaugh, proceeding through appointed counsel, appealed the District Court's judgment of conviction. On July 13, 2013, Strausbaugh filed a pro se motion to stay proceedings. We denied this motion on July 25, 2013.

For the reasons discussed below, we will affirm the District Court's judgment of conviction.

## I. Background[1]

After executing a search warrant pursuant to a child pornography investigation in Canada, Canadian police alerted the United States Postal Inspection Service (USPIS) that a resident of the United States had distributed, and possibly produced, images of child pornography. The Canadian police highlighted an email exchange between the subject of the Canadian investigation and the owner of an email address in the United States, in which the United States resident stated that he had nude images of an eight-month-old female infant and attached a photograph of the child with the comment "here's a preview."[2] An examination of the digital image revealed that the photo of the infant had been taken with a Konica Minolta Dimage digital camera on December 28, 2010. After the Canadian police forwarded this information, the USPIS issued a subpoena to Google, seeking the Internet Protocol (IP) address for the email account. Google provided the IP address, which was part of a Verizon wireless services account. A subsequent subpoena

---

[1] The District Court had jurisdiction pursuant to 28 U.S.C. § 3231 and this Court has jurisdiction pursuant to 28 U.S.C. § 1291.

[2] We refer to the picture attached to the email as the "Canada picture," as Strausbaugh does in his brief.

2

to Verizon revealed that the wireless services were registered to Rebecca Strausbaugh of New Oxford, Pennsylvania. After investigating other email accounts with the same IP address and the residents of that home, the USPIS sought and obtained a search warrant from a magistrate judge for the Strausbaugh home.

Federal agents executed the search warrant on March 18, 2011. Upon execution of the warrant, agents identified furniture that matched furniture in the photograph sent to Canada, and seized the camera and other computing equipment. After the initial search, agents subsequently discovered a pair of external computer hard drives. After the media and storage devices were taken to a mobile crime lab, agents discovered several photographs depicting, *inter alia*, the infant nude from the waist down, the infant being held by Rebecca Strausbaugh, the infant's legs and genitals, and the infant with an erect adult penis pressed against her. Agents also found additional child pornography images and video on the electronic storage devices.

During the execution of the search warrant, Strausbaugh was questioned by federal agents. Before any questioning, Strausbaugh was read his *Miranda* rights and given a written copy of those rights. Strausbaugh initialed a written copy of his rights to indicate that he understood and received the copy. Strausbaugh then signed a waiver of those rights and investigators went over his *Miranda* rights again orally before he answered questions. During questioning, Strausbaugh confessed to the identity of the infant in the photographs; that he had taken the photos; that it was his and his wife's hands that spread the infant's legs and genitals in several photographs; and that it was his penis pressed against the infant in several photographs.

3

The USPIS filed a criminal complaint against Strausbaugh on the day it executed the search warrant, alleging that Strausbaugh had committed crimes involving the sexual exploitation of children. On March 23, 2011, a grand jury in the Middle District of Pennsylvania returned a three-count indictment naming Michael Strausbaugh and Rebecca Strausbaugh as defendants. Subsequently, on May 4, 2011, a grand jury in the Middle District of Pennsylvania returned a six-count superseding indictment, again naming Strausbaugh and his wife as defendants, and charging them with three counts of sexual exploitation of a child in violation of 18 U.S.C. §§ 2251(a) and (e) and 18 U.S.C. § 2. Strausbaugh was also charged with one count of distribution of child pornography in violation of 18 U.S.C. §§ 2252(a)(2) and (b), and one count of possession of child pornography in violation of 18 U.S.C. §§ 2252A(a)(5)(b). Finally, there was a forfeiture count under 18 U.S.C. § 2253.

Strausbaugh and his wife both proceeded to a bench trial before the Honorable William W. Caldwell. During the course of the trial, the District Court heard testimony from Postal Inspector Michael Corricelli, who described the investigation, the execution of the search warrant, and Strausbaugh's statements under questioning. Strausbaugh then took the stand in his own defense. He admitted to committing the acts with which he was charged; he admitted to sending a picture to Canada and trading pictures on the internet roughly eight to a dozen times; and he admitted to taking—or helping to take—the photographs at issue. On October 26, 2011, Strausbaugh was found guilty of all charges.

In preparation for sentencing, the United States Probation Office assembled a Pre-Sentence Report, in which Strausbaugh's total offense level was 43 and his criminal

4

history category was V.  Based on these calculations, Strausbaugh's Guideline range called for life imprisonment, but the range was restricted to 2,520 months by virtue of the statutory maximums set for his sentences of conviction.  The District Court conducted a sentencing hearing for Strausbaugh on May 8, 2012, and ultimately sentenced Strausbaugh to 540 months' imprisonment.

Strausbaugh's timely appeal followed.

## II.  Discussion

Strausbaugh raises the following issues on appeal: (1) whether evidence was obtained in violation of the Mutual Legal Assistance Treaty ("MLAT") in effect between the United States and Canada; (2) whether the District Court erred in refusing to suppress evidence obtained during the execution of a search warrant at Strausbaugh's home; (3) whether the District Court erred in failing to suppress the evidence obtained during Strausbaugh's custodial interrogation; (4) whether the District Court erred when it denied Strausbaugh's motion for acquittal based on sufficiency of the evidence grounds; and (5) whether the District Court's sentence amounted to cruel and unusual punishment.

### A.  Treaty Violation

Strausbaugh, for the first time on appeal, asserts that evidence presented at his trial was obtained in violation of the MLAT between the United States and Canada.  We will review this issue for plain error.  *Puckett v. United States*, 556 U.S. 129 (2009).  Under plain error review, in order to reverse, we must find (1) an error; (2) that is plain or obvious; and (3) that affected substantial rights.  *United States v. Dobson*, 419 F.3d 231, 236 (3d Cir. 2005).

In this case, it is clear that there was no error. The treaty itself states that:

> This Treaty is intended solely for mutual legal assistance between the Parties. The provisions of this Treaty shall not give rise to a right on the part of a private party to obtain, suppress or exclude any evidence or to impede the execution of a request.

24 I.L.M. 1092. Under its very terms, Strausbaugh cannot use the treaty to suppress evidence used in his trial. Indeed, "under international law, it is the contracting foreign government, not the defendant, that would have the right to complain about a [treaty] violation." *United States v. Cordero*, 668 F.2d 32, 38 (1st Cir. 1981). Thus, Strausbaugh's argument has no merit.

### B. Evidence Obtained by Search Warrant

Strausbaugh next challenges the admittance of evidence seized during the search of Strausbaugh's home: he argues that the search warrant was not supported by probable cause and was overbroad, insisting that the evidence should have been suppressed. We exercise plenary review over the district court's legal conclusions, and clear error review of its factual findings. *United States v. Torres*, 534 F.3d 207, 209 (3d Cir. 2008).

### 1. Probable Cause

Strausbaugh makes several arguments attacking the probable cause underlying the search warrant. "The test for probable cause is not reducible to 'precise definition or quantification.'" *Florida v. Harris*, 133 S. Ct. 1050, 1055 (2013) (quoting *Maryland v. Pringle*, 540 U.S. 366, 371 (2003)). As the Supreme Court has noted, all that is required is the kind of "fair probability" on which "reasonable and prudent [people,] not legal technicians, act." *Id.* (alteration in original, citation omitted). Probable cause exists

6

when, viewing the "totality of the circumstances, 'there is a fair probability that contraband or evidence of a crime will be found in a particular place.'" *United States v. Miknevich*, 638 F.3d 178, 182 (3d Cir. 2011) (quoting *Illinois v. Gates*, 462 U.S. 213, 238 (1983)). In reviewing a magistrate judge's finding of probable cause, we must look at the "factual context[]" and must uphold the finding if a "substantial basis" supports it, even if a different magistrate judge might not have made the same finding. *Id.*

Strausbaugh argues that the method with which the USPIS determined the Strausbaugh IP address did not establish probable cause. Specifically, Strausbaugh argues that the IP address obtained by the USPIS was used 20 days after the email to Canada, and that Strausbaugh's name and address was just one of a number of different names that could have been associated with that "dynamic" IP address. Strausbaugh's argument fails to take into account that a probable cause determination must consider the "totality of the circumstances." The circumstances in this case show that the USPIS linked the IP address at issue with the email address used in the Canada email exchange, several email addresses associated with the Strausbaughs, a business operated by Strausbaugh, and to the Strausbaugh property itself. Thus, the probable cause determination was not based merely on the USPIS's determination that the email to Canada was sent from that particular IP address—rather, it was based on several other facts linking the Strausbaugh home to the IP address.

Strausbaugh also argues that the search warrant was based on the "Canada picture," which, he argues, does not constitute child pornography, and therefore, there was no probable cause to support the warrant. This argument is without merit. Even if

7

the "Canada picture" was not "lascivious" under *United States v. Dost*, 636 F. Supp. 828 (S.D. Cal 1986), *aff'd sub nom. United States v. Wiegand*, 812 F.2d 1239 (9th Cir. 1987)—which is not a foregone conclusion, as it appears that several *Dost* factors are satisfied—we must look at the totality of the circumstances. We also must remember that the test is whether there is a "fair probability"—not absolute certainty—of criminal activity. Any reasonable magistrate considering the photograph, which depicted the nude infant, the email exchange, in which it was clear that the purpose was to exchange nude pictures of infants for the purpose of sexual excitement, and the fact that the email originated from the Strausbaugh home would find a "fair probability" that criminal activity was taking place at the Strausbaugh home.

Examining the factual context and the totality of the circumstances, it is clear that there was a "substantial basis" to support the finding of probable cause.

## 2. Breadth of Evidence

Strausbaugh also argues that any evidence seized pursuant to the search warrant, beyond one camera and specific pictures, was too broad. When the USPIS applied for the warrant, it produced evidence that the internet, email, and electronic equipment had been used to distribute child pornography. This provided a "fair probability" that evidence of child pornography-related crimes would be found within the Strausbaugh home. Additionally, Postal Inspector Corricelli, whose affidavit supported the warrant, had specialized knowledge and experience as to the typical manner in which child pornographers create, distribute, receive, and store their contraband. A law enforcement official's specialized experience and training is a legitimate consideration in determining

8

probable cause. *United States v. Yusuf*, 461 F.3d 374, 390 (3d Cir. 2006) (citing *United States v. Arvizu*, 543 U.S. 266, 275 (2002)). In light of that, it was not an error for the District Court to uphold the search and seizure of evidence beyond the camera and specific photographs.

### C. Evidence Obtained by Custodial Interrogation

Strausbaugh also challenges the admission of statements he made during a custodial interrogation, arguing that they were the result of improper coercion. The record does not support his contention. We exercise plenary review over the district court's legal conclusions, and clear error review of its factual findings. *Torres*, 534 F.3d at 209.

An admission made during a custodial interrogation may only be used if it is clear that the defendant waived his rights under *Miranda v. Arizona*, 348 U.S. 436 (1979), and that the waiver was made as a free, deliberate, and fully aware choice absent intimidation, coercion, or deception. *Berghuis v. Thompkins*, 130 S. Ct. 2250, 2260 (2010). The record indicates that Strausbaugh deliberately waived his *Miranda* rights—his *Miranda* rights were read to him, he was presented with a written copy of the rights, which he signed, and he initialed that written copy as each right was explained. Then, Strausbaugh signed an express waiver of those rights before he answered any questions, and investigators went over his rights against self-incrimination again before beginning questioning. Furthermore, the record contradicts Strausbaugh's argument that the Postal Inspector who interviewed him coerced Strausbaugh into giving statements by promising

9

him that he would go to a rehabilitation center instead of jail. Thus, the District Court did not err by allowing Strausbaugh's admissions into the record.

## D. Sufficiency of the Evidence

Strausbaugh next challenges the District Court's denial of his motion for acquittal based on sufficiency of the evidence. We exercise plenary review over the grant or denial of a motion for acquittal. *United States v. Mike*, 655 F.3d 167, 174 (3d Cir. 2011). We must sustain a conviction if "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt" when the evidence is viewed in the light most favorable to the government. *Id.*

In support of his argument, Strausbaugh again contends that the "Canada picture" was not child pornography and urges that the government did not show a nexus to interstate commerce. Even if the picture that Strausbaugh emailed to the Canadian citizen did not constitute child pornography—and again, that is far from clear—several other photographs that Strausbaugh admitted to taking or helping to take certainly did. *See Dost*, 636 F. Supp. at 832 (listing factors courts consider in determining whether a visual image of a child is proscribed by 18 U.S.C. § 2256). Additionally, the government produced pictures and videos depicting child pornography seized from Strausbaugh's home, which supports Strausbaugh's possession conviction. Finally, there is no dispute that the Konica Minolta Dimage camera was used to take the photographs and that it was manufactured in Korea. This satisfies the interstate commerce jurisdictional "hook." *See United States v. Galo*, 239 F.3d 572, 575-76 (3d Cir. 2001) (citing *United States v. Rodia*, 194 F.3d 465 (3d Cir. 1999)) ("[T]he requirement that at least one of the materials used to

10

produce the child pornography travel in interstate commerce provides the jurisdictional hook."). Accordingly, there was sufficient evidence to uphold the convictions on all charges.

## E. District Court's Sentence

Our review of a defendant's Eighth Amendment challenge to his sentence is plenary. We note, however, that the Eighth Amendment only proscribes punishment grossly disproportionate to the severity of the crime, and therefore "'only an extraordinary case will result in a constitutional violation.'" *Miknevich*, 638 F.3d at 185-86 (quoting *United States v. Walker*, 473 F.3d 71, 79 (3d Cir. 2007)). Furthermore, a sentence that falls within the limits imposed by a statute is neither excessive nor cruel and unusual. *Id.* at 187. In this case, Strausbaugh's 45-year sentence on his five separate convictions was decidedly less than the maximum sentence that could have been imposed under the statutes of conviction. Additionally, in other cases involving multiple counts of production and/or distribution of child pornography, sentences have exceeded 45 years and have been upheld. *See, e.g.*, *United States v. Sarras*, 575 F.3d 1191 (11th Cir. 2009) (upholding a 100-year sentence on convictions on three counts of sexual exploitation of a minor and one conviction of possession of child pornography); *United States v. Paton*, 535 F.3d 829 (8th Cir. 2008) (upholding a life sentence for convictions on five counts of production of child pornography). We cannot say that Strausbaugh's sentence was grossly disproportionate to the severity of the crime. It simply does not amount to cruel and unusual punishment, and his sentence must therefore be affirmed.

### III.  Conclusion

For the reasons stated above, we will affirm the District Court's judgment of conviction and sentence.