******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

# STATE OF CONNECTICUT *v.* THOMAS WILLIAM SAWYER
## (SC 20132)

Robinson, C. J., and Palmer, McDonald, D'Auria,
Mullins, Kahn and Ecker, Js.

*Syllabus*

Convicted, on a conditional plea of nolo contendere, of the crime of posses-
sion of child pornography in the second degree, the defendant appealed,
claiming, inter alia, that the warrant authorizing a search of the defen-
dant's residence and ultimately leading to the seizure of more than 400
images and some videos of suspected child pornography was supported
by probable cause. The affidavit in support of the application for the
search warrant provided that one of the defendant's roommates called
the police after he observed the defendant looking at his computer
screen, which displayed a photograph of what appeared to be an eight
to nine year boy standing naked with no pubic hair and his genitals
exposed, followed by a photograph of a naked girl with very small
breasts and her hand covering her genital area. The two photographs
appeared to be in a slide projection program, and there appeared to be
other thumbnail photographs that were too small to identify. After the
defendant was arrested on the basis of the seized images and videos,
he filed a motion to suppress, claiming, inter alia, that there was no
probable cause to search his residence for child pornography. The
motion to suppress was denied. On the defendant's appeal from the
judgment of conviction, *held*:

1. The court issuing the search warrant correctly found that there was
probable cause to search the defendant's residence because that court
reasonably could have determined, on the basis of the totality of the
circumstances described in the search warrant affidavit and the reason-
able inferences drawn therefrom, that there was a substantial chance
that a search of the defendant's residence would uncover evidence of
possession of child pornography: the descriptions in the affidavit of the
two photographs of nude children provided a fair probability that the
defendant was in possession of lascivious images of children, as the
court could have inferred from those descriptions that the defendant
possessed and used for a sexual purpose photographs of nude, coy,
and posed children, and there was no immediately apparent, innocent,
alternative explanation for his behavior; moreover, the affidavit
explained that the defendant's roommate observed the defendant view-
ing the two photographs in succession, in what appeared to be a
slideshow, as part of a larger collection of thumbnails that were too small
to identify, which provided the basis for inferences that the defendant
possessed and viewed the photographs intentionally, there was a sub-
stantial chance that at least some of the thumbnails were lascivious
depictions of nude children, and the defendant was using the photo-
graphs for a sexual purpose; furthermore, although the defendant
claimed that the court that denied his motion to suppress incorrectly
concluded that whether the two photographs depicted child pornogra-
phy was irrelevant to the probable cause inquiry, this court did not
interpret the trial court's explanation to mean that whether the photo-
graphs were in fact child pornography could have no bearing on the
probable cause determination but, rather, that the probable cause inquiry
did not require the court issuing the warrant to be able to determine
conclusively that the photographs were in fact pornographic, as it
required the issuing court only to determine from the totality of the
circumstances presented in the affidavit and the reasonable inferences
drawn therefrom that there was a substantial chance that a search of
the defendant's residence would uncover evidence of possession of
child pornography.

2. The defendant could not prevail on his unpreserved claim that this court
should adopt a more demanding standard under the Connecticut consti-
tution for assessing whether there is probable cause to issue a search
warrant and, specifically, that it should construe probable cause to

require a degree of probability of more probable than not, at least in cases in which it is unknown when the warrant issues whether a crime has occurred, because the factors set forth in *State* v. *Geisler* (222 Conn. 672) weigh in favor of a more stringent standard: it is well settled that, under the Connecticut constitution, proof of probable cause requires less than proof by a preponderance of the evidence, and, in the absence of a compelling reason to break from the long-standing approach of this court, as well as the federal courts and a majority of other states, this court declined to disturb the established probable cause standard; moreover, this court declined to adopt a more probable than not standard of probable cause in cases in which it is unknown when the warrant issues whether a crime has occurred, as the creation of two separate and distinct probable cause standards would represent a gratuitous and unnecessary complication of an already complicated area of constitutional law; accordingly, because this court left in place the existing probable cause standard and determined that the search warrant in the present case was supported by probable cause, the defendant could not establish that a constitutional violation existed and, therefore, could not prevail on his unpreserved claim.

Argued October 16, 2019—officially released March 24, 2020

*Procedural History*

Information charging the defendant with the crime of possession of child pornography in the first degree, brought to the Superior Court in the judicial district of Ansonia-Milford, geographical area number twenty-two, where the court, *Brown, J.*, denied the defendant's motion to suppress certain evidence; thereafter, the defendant was presented to the court, *Iannotti, J.*, on a conditional plea of nolo contendere to the charge of possession of child pornography in the second degree; judgment of guilty in accordance with the plea, from which the defendant appealed. *Affirmed.*

*Richard Emanuel*, for the appellant (defendant).

*Robert J. Scheinblum*, senior assistant state's attorney, with whom, on the brief, were *Margaret E. Kelley*, state's attorney, and *Amy L. Bepko*, executive assistant state's attorney, for the appellee (state).

*Opinion*

McDONALD, J. The defendant, Thomas William Sawyer, was convicted on a conditional plea of nolo contendere; see General Statutes § 54-94a; of possession of child pornography in the second degree in violation of General Statutes § 53a-196e. The defendant entered his plea following the trial court's denial of his motion to suppress hundreds of photographs and a smaller number of videos of suspected child pornography that the police recovered from computer equipment and related media storage seized from the defendant's residence pursuant to a search warrant. The defendant appealed from his conviction to the Appellate Court, and the case was transferred to this court. On appeal, the defendant argues that the search warrant was not supported by probable cause because the issuing judge could not have reasonably inferred from descriptions in the search warrant affidavit of two photographs of nude children that the photographs were lascivious. This case requires us to decide whether the totality of the circumstances described in the affidavit and the reasonable inferences drawn therefrom support a finding of probable cause to believe that a search of the defendant's residence would uncover evidence of possession of child pornography. Because we conclude that the affidavit did support this finding, we affirm the judgment of the trial court.

The affidavit set forth the following facts. In July, 2015, the defendant was a brother of The Brothers of Holy Cross, living with two other brothers in an apartment they rented from Saint John Vianney Church in West Haven. Each of the three men had his own bedroom in a four bedroom suite, and they shared a common living room and kitchen. When the defendant moved to the apartment approximately ten months prior, he brought with him two computers, one being community property of The Brothers of Holy Cross and the other owned by Holy Cross High School in Waterbury, where the defendant served as an information technology supervisor. Both computers were set up in the fourth bedroom, which was otherwise used for guests and storage. The defendant was the only one of the men who used the computers.

One of the defendant's roommates, Lawrence Lussier, called West Haven police after he observed the defendant looking at what Lussier described as "child pornography" on a computer in the fourth bedroom. A few days later, at the request of West Haven detectives, Lussier went to police headquarters to give a recorded statement about the incident. He reported that he saw the defendant sitting at one of his computers with headphones on, which was not unusual. On the computer screen, however, Lussier saw "a picture of a naked boy, standing with his genitals exposed, [and] the boy appeared to be approximately [eight to nine] years old

with no visible pubic hair," followed by "a picture of a naked girl, with very small breasts and her hand covering her genital area." The two photographs "appeared to be in a slide projection program . . . because the pictures went from the left side to the right side [of the screen] and were only visible for several seconds." He also saw what appeared to be "other thumbnail pictures on the left side of the screen, but they were too small to identify." Lussier was confident, given his life experience as a seventy-five year old man and former secondary education schoolteacher, that each of the two photographs depicted young children.

The next day, Detectives Domenic Vinci and William Conlan applied for a warrant to seize the defendant's computer equipment and storage devices and to search them for evidence of possession of child pornography. In addition to the previously described facts, the detectives also noted in the affidavit that they had about forty years of combined experience and that they were assigned to the investigative services division of the West Haven Police Department, in which capacity they had investigated "numerous incidents of the nature set forth in [the] [a]ffidavit." They also represented, based on their knowledge, training, and experience, that computer files or their remnants may be discovered and recovered years after they are downloaded, deleted, or viewed on the Internet. The issuing judge, *Markle, J.*, determined that there was probable cause to issue the search warrant. By signing the warrant, the judge authorized the police to search the defendant's residence and to seize and search computers and related storage devices and equipment for evidence of possession of child pornography.

The record provides the following additional, undisputed facts. The police executed the search warrant the next day and seized electronics, videotapes, DVDs, and CDs. At the detectives' request, the defendant voluntarily came to the police station for an interview, in which he admitted that he "enjoyed looking at [photographs] and videos of prepubescent young boys." A subsequent analysis of the seized items by the state Computer Crimes and Electronic Evidence Laboratory revealed more than 400 images and a smaller number of videos of suspected child pornography. Detectives then obtained and executed a warrant to arrest the defendant for possession of child pornography in the first degree in violation of General Statutes § 53a-196d.

The state initially charged the defendant with possession of child pornography in the first degree, and the defendant pleaded not guilty. The defendant moved to suppress the seized evidence in part on the ground that the affidavit was insufficient to support probable cause because the two photographs Lussier saw did not depict "sexually explicit conduct," which is required to constitute child pornography; General Statutes § 53a-193 (13);

and which, as relevant to the present case, is defined as "lascivious exhibition of the genitals or pubic area . . . ." General Statutes § 53a-193 (14) (E).[1]

At the hearing on the defendant's motion to suppress, defense counsel argued that probable cause was lacking because the affidavit described only a brief observation of "several seconds," by a person with no articulated experience distinguishing between child pornography and a photograph of a nude child, of two photographs that the state conceded were not lascivious.[2] The court denied the defendant's motion to suppress, reasoning that "[w]hether the [photographs] actually depicted 'sexually explicit conduct' was not a relevant area of inquiry for the issuing court. The only relevant issue . . . was whether the affidavit presented sufficient objective indicia of reliability to justify a finding of probable cause that the [photographs] depicted minors engaged in sexually explicit conduct." The court concluded that "[t]he issuing court was permitted to infer from Lussier's statements that he in fact observed [photographs] of naked children on a computer that was in the defendant's possession, and that it was more probable than not[3] that evidence of . . . possession of child pornography . . . could be found pursuant to a search of the defendant's items." (Footnote added.)

Following the suppression hearing, the state amended its information, charging the defendant with possession of child pornography in the second degree, in violation of § 53a-196e. The same day, the defendant withdrew his not guilty plea and entered a conditional plea of nolo contendere, reserving the right to appeal the denial of his motion to suppress. The trial court rendered judgment in accordance with the plea agreement and sentenced the defendant to ten years imprisonment, execution suspended after three years,[4] and ten years of probation. The defendant appealed from the trial court's judgment to the Appellate Court, and the appeal was transferred to this court pursuant to General Statutes § 51-199 (c) and Practice Book § 65-2.

On appeal, the defendant advances two claims. First, the defendant argues that the trial court incorrectly concluded that the affidavit provided probable cause to search his residence for evidence of possession of child pornography. Second, he argues that this court should adopt a "more probable than not" standard of probable cause under article first, § 7, of the Connecticut constitution, and that, even if the search warrant survives under the current standard, it fails under the more probable than not standard. We conclude that the issuing judge correctly found that there was probable cause to conduct the search because the judge reasonably could have determined from the affidavit that there was a fair probability that a search of the defendant's residence would uncover evidence of possession of child pornography. In addition, we decline to depart

from our well established standard providing that proof of probable cause requires less than proof by a preponderance of the evidence. Accordingly, we affirm the judgment of the trial court.

I

The defendant first claims that it was unreasonable to conclude, on the basis of the information in the affidavit, that there was probable cause to search his residence for evidence of possession of child pornography. Specifically, he argues that the descriptions in the affidavit of the two photographs of nude children were insufficient to support an inference that there was a substantial chance that the photographs were lascivious, and, thus, the court could not conclude on the basis of *legal* images that there was probable cause to believe that a search would uncover other, *illegal* images. The state counters that looking at the totality of the facts described in the affidavit and the reasonable inferences drawn therefrom—as the probable cause inquiry requires—the issuing judge reasonably could have concluded that there was a fair probability that a search of the defendant's residence would uncover evidence of possession of child pornography. We agree with the state.

The legal principles guiding our probable cause analysis are well established. Both the fourth amendment to the United States constitution and article first, § 7, of the Connecticut constitution prohibit the issuance of a search warrant in the absence of probable cause. *State* v. *Shields*, 308 Conn. 678, 689, 69 A.3d 293 (2013), cert. denied, 571 U.S. 1176, 134 S. Ct. 1040, 188 L. Ed. 2d 123 (2014). Probable cause to search is established if there is probable cause to believe that "(1) . . . the particular items sought to be seized are connected with criminal activity or will assist in a particular . . . conviction . . . and (2) . . . the items sought to be seized will be found in the place to be searched." (Internal quotation marks omitted.) *State* v. *Batts*, 281 Conn. 682, 700–701, 916 A.2d 788, cert. denied, 552 U.S. 1047, 128 S. Ct. 667, 169 L. Ed. 2d 524 (2007). There is no "uniform formula" to determine probable cause—it is "not readily, or even usefully, reduced to a neat set of legal rules"—rather, it turns on "the assessment of probabilities in particular factual contexts . . . ." (Internal quotation marks omitted.) *State* v. *Shields*, supra, 690. Probable cause "requires less than proof by a preponderance of the evidence . . . ." (Citation omitted; internal quotation marks omitted.) Id., 689–90. There need be only "a probability or substantial chance of criminal activity, not an actual showing of such activity. By hypothesis, therefore, innocent behavior frequently will provide the basis for a showing of probable cause . . . . [T]he relevant inquiry is not whether particular conduct is innocent or guilty, but the degree of suspicion that attaches to particular types of noncriminal acts." (Internal quota-

tion marks omitted.) Id., 690, citing *Illinois* v. *Gates*, 462 U.S. 213, 243–44 n.13, 103 S. Ct. 2317, 76 L. Ed. 2d 527 (1983). "The task of the issuing [judge] is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit . . . there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois* v. *Gates*, supra, 238.

In our review of whether there was probable cause to support the warrant, "we may consider only the information that was actually before the issuing judge . . . and the reasonable inferences to be drawn therefrom." (Internal quotation marks omitted.) *State* v. *Shields*, supra, 308 Conn. 691. "The judge is entitled to rely on his own common sense and the dictates of common experience, although the standard for determining probable cause is an objective one." *State* v. *DeChamplain*, 179 Conn. 522, 528, 427 A.2d 1338 (1980). "[B]ecause of our constitutional preference for a judicial determination of probable cause, and mindful of the fact that [r]easonable minds may disagree as to whether a particular [set of facts] establishes probable cause . . . we evaluate the information contained in the affidavit in the light most favorable to upholding the issuing judge's probable cause finding." (Citation omitted; internal quotation marks omitted.) *State* v. *Shields*, supra, 691. We "review the issuance of a warrant with deference to the reasonable inferences that the issuing judge could have and did draw . . . and . . . uphold the validity of [the] warrant . . . [if] the affidavit at issue presented a substantial factual basis for the [judge's] conclusion that probable cause existed." (Citation omitted; internal quotation marks omitted.) Id. The fact that we might draw different reasonable inferences from the affidavit than the issuing judge "does not alter our conclusion. On the contrary, we defer to the issuing judge's reasonable inferences, even when other inferences also might be reasonable, or when the issuing judge's probable cause finding is predicated on permissible, rather than necessary, inferences." Id., 702. "In a doubtful or marginal case . . . our constitutional preference for a judicial determination of probable cause leads us to afford deference to the [issuing judge's] determination."[5] (Internal quotation marks omitted.) *State* v. *Diaz*, 226 Conn. 514, 546, 628 A.2d 567 (1993).

In the present case, we must determine whether, on the basis of the totality of the circumstances described in the affidavit and the reasonable inferences drawn therefrom, the issuing judge reasonably could have concluded that there was a substantial chance that the defendant was in possession of child pornography. We think that the affidavit does reasonably support this conclusion.

We begin our analysis with the nature of the photo-

graphs described in the affidavit. Under § 53a-193 (13), "child pornography" means a "visual depiction" involving a person under sixteen years old engaging in "sexually explicit conduct . . . ." In this case, whether the photographs described by Lussier depict "sexually explicit conduct" depends on whether they involve a "lascivious exhibition of the genitals or pubic area . . . ." General Statutes § 53a-193 (14) (E). The statute does not define "lascivious," but Black's Law Dictionary defines it as "tending to excite lust; lewd; indecent; obscene." Black's Law Dictionary (11th Ed. 2019) p. 1053.

We have not previously had occasion to consider what analytical framework should be employed to determine whether a description of a photograph supports an inference that the photograph could be lascivious. A majority of federal circuit courts of appeals, however, have found useful the factors first set forth in *United States* v. *Dost*, 636 F. Supp. 828 (S.D. Cal. 1986), aff'd, 813 F.2d 1231 (9th Cir. 1987), and aff'd sub nom. *United States* v. *Wiegand*, 812 F.2d 1239 (9th Cir.), cert. denied, 484 U.S. 856, 108 S. Ct. 164, 98 L. Ed. 2d 118 (1987). See, e.g., *United States* v. *Rivera*, 546 F.3d 245, 253 (2d Cir. 2008) (permitting use of *Dost* factors in jury deliberations), cert. denied, 555 U.S. 1204, 129 S. Ct. 1395, 173 L. Ed. 2d 644 (2009); *United States* v. *Hill*, 459 F.3d 966, 972 (9th Cir. 2006) (noting that *Dost* factors had "utility" in context of case), cert. denied, 549 U.S. 1299, 127 S. Ct. 1863, 167 L. Ed. 2d 353 (2007); *United States* v. *Horn*, 187 F.3d 781, 789 (8th Cir. 1999) ("we find helpful the six criteria suggested in . . . *Dost*"), cert. denied, 529 U.S. 1029, 120 S. Ct. 1442, 146 L. Ed. 2d 330 (2000); *United States* v. *Amirault*, 173 F.3d 28, 32 (1st Cir. 1999) ("[w]e believe that the *Dost* factors are generally relevant and provide some guidance"); *United States* v. *Villard*, 885 F.2d 117, 122 (3d Cir. 1989) (adopting *Dost* factors because they "provide specific, sensible meaning to the term 'lascivious' "). But see *United States* v. *Price*, 775 F.3d 828, 831 (7th Cir. 2014) (discouraging use of *Dost* factors because they are "unnecessary" given clear statutory definition of " 'sexually explicit conduct' ").[6] The *Dost* factors consider (1) "whether the focal point of the visual depiction is on the child's genitalia or pubic area," (2) "whether the setting of the visual depiction is sexually suggestive, i.e., in a place or pose generally associated with sexual activity," (3) "whether the child is depicted in an unnatural pose, or in inappropriate attire, considering the age of the child," (4) "whether the child is fully or partially clothed, or nude,"[7] (5) "whether the visual depiction suggests sexual coyness or a willingness to engage in sexual activity," and (6) "whether the visual depiction is intended or designed to elicit a sexual response in the viewer." *United States* v. *Dost*, supra, 832.

We agree with the First Circuit that "the *Dost* factors

are generally relevant and provide some guidance in evaluating whether the display in question is lascivious. We emphasize, however, that these factors are neither comprehensive nor necessarily applicable in every situation. . . . The inquiry will always be case-specific." *United States* v. *Amirault*, supra, 173 F.3d 32. Although they should not be rigidly or mechanically applied, the *Dost* factors are helpful in a case like this one, in which probable cause depends in part on whether the description in a search warrant affidavit of possibly lascivious images supports, as part of the totality of the circumstances, a reasonable inference that evidence of a crime will be found in the place to be searched.

*United States* v. *Hill*, supra, 459 F.3d 966, is an illustrative example of a court's useful application of the *Dost* factors in this context. In that case, the Ninth Circuit upheld a search warrant as supported by probable cause on the basis of the following two descriptions of photographs in the affidavit. First, "a color picture of a female, white, approximately [fifteen] years old, with long dark brown hair. The female is in a room standing between a couch and a coffee table. There is a framed picture on the wall above the couch. She is wearing only a long blouse and pair of socks. The blouse is open and she is exposing her breast and pubic area to the camera, which she is facing while leaning to her left." (Internal quotation marks omitted.) Id., 968. Second, "a color picture of . . . two females, white, approximately [seven to nine] years of age, both with dirty blond hair. These females are standing on a beach during the daytime. The shorter of the two females is standing to the right of the picture while the other female is standing behind her. Both females are facing the camera askew and wearing only a robe, which is open exposing the undeveloped breast and pubic area of both girls. They both are turning their faces away from the camera preventing the viewer from seeing their faces." (Internal quotation marks omitted.) Id., 968–69. Applying the *Dost* factors to the descriptions, the court concluded that the affidavit provided a "fair probability" that the photographs were lascivious because it described "three partially nude children, who were provocatively and unnaturally dressed in light of the photographs' settings," and whose "clothing was opened so as to reveal their breasts and pubic areas, with the girls appearing in sexually suggestive poses." Id., 972–73. The court also observed that the descriptions "did not raise doubts" that the images could serve an innocent, nonsexual purpose. Id., 973.

Not all courts agree as to the level of detail—or, when applied, the number of *Dost* factors—that must be present for a description of an image to support an inference that the image could be lascivious. Compare *United States* v. *Villard*, supra, 885 F.2d 122 ("[a]lthough more than one [*Dost*] factor must be present in order to establish 'lasciviousness,' all six factors

need not be present"), with *United States* v. *Wolf*, 890 F.2d 241, 245 n.6 (10th Cir. 1989) (expressly declining to hold that "more than one *Dost* factor must be present"). We find instructive, however, two cases in which the Seventh Circuit concluded that a description in a search warrant affidavit supported a reasonable inference that there was a substantial chance that the respective depictions could be lascivious. First, in *United States* v. *Griesbach*, 540 F.3d 654 (7th Cir. 2008), cert. denied, 555 U.S. 1122, 129 S. Ct. 960, 173 L. Ed. 2d 151 (2009),[8] the Seventh Circuit upheld a search warrant as supported by probable cause on the basis of the following image description in the warrant affidavit: "[A] naked female [is] exposing her vagina. The female is lying on her back and her vagina is the primary focus . . . ." (Internal quotation marks omitted.) Id., 655. In concluding that "the verbal description was sufficient to justify an inference that a search of the defendant's computer files would turn up pornographic images," the court emphasized the fact that the " 'primary focus' " of the photograph was on the child's vagina. Id., 656.

Similarly, in *United States* v. *Shelton*, 418 Fed. Appx. 514 (7th Cir.), cert. denied, 565 U.S. 903, 132 S. Ct. 301, 181 L. Ed. 2d 184 (2011),[9] the Seventh Circuit upheld a search warrant as supported by probable cause on the basis of the following description in the warrant affidavit: "[A] video of a young girl appearing to be about [twelve] years of age undressing to complete nudity. The background for the video scene appeared to be a bedroom." (Internal quotation marks omitted.) Id., 515. The court opined that the fact that the video was set in a bedroom, along with the fact that the child undressed to complete nudity, provided "commonsense support" that the defendant might have been in possession of child pornography. Id., 518.

The descriptions of the two photographs in the present case likewise provide a "fair probability"; *Illinois* v. *Gates*, supra, 462 U.S. 238; or a "substantial chance"; (internal quotation marks omitted) *State* v. *Shields*, supra, 308 Conn. 690; that the defendant was in possession of lascivious images of children. The affidavit averred that Lussier saw "a picture of a naked boy, standing with his genitals exposed, [and] the boy appeared to be approximately [eight to nine] years old with no visible pubic hair," followed by "a picture of a naked girl, with very small breasts and her hand covering her genital area." At least three of the *Dost* factors are implicated here. The fourth *Dost* factor is implicated because both children are nude, one with his genitals showing. As discussed previously, nudity, in and of itself, is not pornographic. See footnote 7 of this opinion. Nevertheless, the issuing judge reasonably could have inferred from the description of the girl's "hand covering her genital area" that the photograph suggested coyness, and that the girl was posed in that manner by the photographer, implicating two additional

*Dost* factors, namely, the fifth and sixth factors. See, e.g., *United States* v. *Overton*, 573 F.3d 679, 687 (9th Cir.) ("The hair in the child's face and arms partially covering her breasts suggests sexual coyness or reluctance. The victim testified that [the defendant] directed her regarding where to place her hands. Thus, the image's depiction of sexual coyness was intended and the image was likely designed to elicit a sexual response in the viewer." (Internal quotation marks omitted.)), cert. denied, 558 U.S. 977, 130 S. Ct. 480, 175 L. Ed. 2d 321 (2009); *United States* v. *Rivera*, supra, 546 F.3d 251 ("an innocent child can be coaxed to assume poses or expressions that bespeak sexual availability when viewed by certain adults, resulting in an image that 'suggests sexual coyness or a willingness to engage in sexual activity' regardless of the child's own characteristics").

To be certain, these are not the only inferences a judge could reasonably draw. For instance, it would also be reasonable to infer that the girl covered her genitals out of modesty or embarrassment, so that they would not be exposed in the photograph. But, as we explained previously, our task in determining whether a search warrant is supported by probable cause is not to substitute our own judgment for that of the issuing court; rather, our task is to determine whether the issuing court *could* have reasonably made particular inferences. See *State* v. *Shields*, supra, 308 Conn. 702. It is not a question of whether a particular inference is necessary or whether it is the strongest inference available—it is only whether the inference is permissible. See id. In light of this deferential standard of review, we think the issuing judge reasonably could have concluded that there was a substantial chance that the defendant was in possession of lascivious images of children.

We recognize that it is a close call whether the descriptions of the photographs are sufficient to support a reasonable inference that there is a substantial chance that the two photographs themselves are lascivious—more detail certainly would have been helpful to understand the context. But whether there was probable cause to search did not depend solely on the descriptions of the photographs; the probable cause determination involves an inquiry into the totality of the circumstances presented to the issuing judge. See, e.g., *Illinois* v. *Gates*, supra, 462 U.S. 238. Indeed, several courts have upheld probable cause determinations on the basis of the totality of the circumstances even though the issuing judge could not conclude from the affidavit that there was a fair probability that an image depicted child pornography. See, e.g., *United States* v. *Strausbaugh*, 534 Fed. Appx. 178, 183 (3d Cir. 2013) ("Even if the [photograph of a nude infant] was not 'lascivious' under [*Dost*]—which is not a foregone conclusion, as it appears that several *Dost* factors are satis-

fied—we must look at the totality of the circumstances. We also must remember that the test is whether there is a 'fair probability'—not absolute certainty—of criminal activity."), cert. denied, 574 U.S. 843, 135 S. Ct. 99, 190 L. Ed. 2d 81 (2014); *United States* v. *Ogden*, United States District Court, Docket No. 06-20033 (W.D. Tenn. May 28, 2008) (concluding that description of photograph of minor "standing fully nude, smiling, or lying on her bed" satisfied at least two *Dost* factors but basing probable cause determination on totality of circumstances described in affidavit (internal quotation marks omitted)); *United States* v. *Hernandez*, 183 F. Supp. 2d 468, 475–76 (D.P.R. 2002) (upholding search warrant as supported by probable cause on basis of totality of circumstances despite being unable to conclude from description—"a blond girl with no clothes on, trying to put on a ballerina outfit, with lots of necklaces around her neck"—that photograph was lascivious (internal quotation marks omitted)).

Here, circumstances beyond Lussier's descriptions of the photographs further support a finding of probable cause. For example, the affidavit also explained that Lussier saw the defendant viewing the two photographs in succession, in what appeared to be a slideshow, as part of a larger collection of thumbnails that were too small to identify. This observation provides the basis for three important, permissible inferences. First, the defendant possessed and viewed the photographs intentionally. It is reasonable to expect that a person suddenly and unexpectedly presented with photographs of nude children would register some reaction, but Lussier reported no such reaction. He did not indicate, for instance, that the defendant appeared startled or alarmed by what was on the screen. Second, the fact that Lussier saw the defendant viewing in succession the two previously described photographs, along with a set of thumbnails too small to identify, supports a reasonable inference that there was a substantial chance that at least some of the thumbnails were lascivious depictions of nude children. Third, it is reasonable to infer that the defendant was using the photographs for a sexual purpose. Although it might be suspicious to observe an individual looking at even a single photograph of a nude child, viewing a slideshow of several nude children in succession undoubtedly supports the issuing court's conclusion that there was a substantial chance that the defendant possessed child pornography. Cf. *United States* v. *Hill*, supra, 459 F.3d 973 ("the descriptions [of the photographs] did not raise doubts that the images served some [innocent] purpose").

The inference that the defendant had a sexual purpose is further supported by the fact that he and Lussier had been living together for ten months, and Lussier was concerned enough by what he saw to call the police. Because they had lived together for almost one year, it would be reasonable to think that Lussier would know

if the defendant had, for example, children or grandchildren of his own and, thus, a plausibly innocuous reason to possess photographs of nude children. The issuing judge could infer that there was no such explanation in this context. The absence of an innocent explanation increases the likelihood that the defendant possessed and used the photographs for a sexual purpose.

In sum, the totality of the circumstances described in the affidavit and the reasonable inferences drawn therefrom paint the following picture: the defendant possessed and used for a sexual purpose photographs of nude, coy, and posed children, he had a collection of such photographs on his computer, and there was no immediately apparent, innocent, alternative explanation for his behavior.[10] Given these circumstances, the issuing court reasonably could have concluded—in the practical, commonsense inquiry that probable cause demands—that there was a substantial chance that a search of the defendant's residence would uncover evidence of possession of child pornography. See *Illinois* v. *Gates*, supra, 462 U.S. 238.

The defendant argues that the court that denied his motion to suppress incorrectly concluded that whether the two photographs depicted child pornography was irrelevant to the probable cause inquiry. The court explained that "[w]hether the [photographs] actually depicted 'sexually explicit conduct' was not a relevant area of inquiry for the issuing court. The only relevant issue . . . was whether the affidavit presented sufficient objective indicia of reliability to justify a finding of probable cause that the [photographs] depicted minors engaged in sexually explicit conduct." We do not interpret the court's statement to mean that whether the photographs were in fact child pornography could have no bearing on the probable cause determination—it goes without saying that if, for example, the issuing court were able to conclude from the affidavit that the photographs were *in fact* pornographic, there would be a particularly strong case for probable cause to search the defendant's residence. But the probable cause inquiry did not require the issuing court to be able to determine *conclusively* that the photographs were *in fact* pornographic; it only required the issuing court to be able to determine from the totality of the circumstances presented in the affidavit and the reasonable inferences drawn therefrom that there was *a substantial chance* that a search of the defendant's residence would uncover evidence of possession of child pornography. See *State* v. *Shields*, supra, 308 Conn. 690; see also *Illinois* v. *Gates*, supra, 462 U.S. 244 n.13 ("the relevant inquiry is not whether particular conduct is 'innocent' or 'guilty,' but the degree of suspicion that attaches to particular types of noncriminal acts").

## II

We turn next to the defendant's claim that we should

adopt a more demanding standard under article first, § 7, of the Connecticut constitution for assessing whether there is probable cause to issue a search warrant. Specifically, the defendant argues that we should construe "probable cause" to require a degree of probability of " 'more probable than not,' " at least in cases in which it is unknown at the time the warrant issues whether a crime has occurred, because the factors first set forth in *State* v. *Geisler*, 222 Conn. 672, 684–85, 610 A.2d 1225 (1992), weigh in favor of a more stringent standard. The defendant raises this claim for the first time on appeal, but he asserts that we should reach the merits of the issue under *State* v. *Golding*, 213 Conn. 233, 567 A.2d 823 (1989). Because we decline to depart from our consistent and long-standing recognition that proof of probable cause requires a lesser showing than a preponderance of the evidence, the defendant cannot establish that there exists a constitutional violation, and his claim thus fails under the third prong of *Golding*. See id., 240.

*Golding* provides that a defendant may prevail on an unpreserved claim when "(1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation . . . exists and . . . deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt." (Footnote omitted.) Id., 239–40; see also *In re Yasiel R.*, 317 Conn. 773, 781, 120 A.3d 1188 (2015) (modifying third prong of *Golding* by eliminating word "clearly" before "exists" and "deprived").

Here, the defendant's unpreserved claim is reviewable because (1) the record is adequate to review the alleged claim of error, and (2) the claim is of a constitutional magnitude alleging the violation of a fundamental right. See, e.g., *State* v. *Peeler*, 271 Conn. 338, 360, 857 A.2d 808 (2004) ("[t]he first two [prongs of *Golding*] involve a determination of whether the claim is reviewable; the second two . . . involve a determination of whether the defendant may prevail" (internal quotation marks omitted)), cert. denied, 546 U.S. 845, 126 S. Ct. 94, 163 L. Ed. 2d 110 (2005). We thus turn to the third prong to determine whether the alleged constitutional violation exists and deprived the defendant of a fair trial.

In construing the Connecticut constitution to determine whether it provides our citizens with greater protections than the federal constitution, "we employ a multifactor approach that we first adopted in [*State* v. *Geisler*, supra, 222 Conn. 685]. The factors that we consider are (1) the text of the relevant constitutional provisions; (2) related Connecticut precedents; (3) persuasive federal precedents; (4) persuasive precedents

of other state courts; (5) historical insights into the intent of [the] constitutional [framers]; and (6) contemporary understandings of applicable economic and sociological norms [otherwise described as public policies]." (Internal quotation marks omitted.) *State* v. *Purcell*, 331 Conn. 318, 341–42, 203 A.3d 542 (2019).

The defendant's *Geisler* analysis can be summarized as follows: (1) the textual approach favors a common interpretation of the probable cause provisions in the federal and the state constitutions; (2) this court has recognized in several contexts that probable cause requires a showing of less than a preponderance of the evidence, but it has also held in several contexts that article first, § 7, of the Connecticut constitution provides greater protection than the fourth amendment to the federal constitution; (3) federal courts have "essentially rejected" the more probable than not standard; (4) a majority of states have declined to adopt a more probable than not standard; (5) our state constitutional history is sparse, but Connecticut common law demonstrates a commitment to privacy and careful scrutiny of warrants that predates our state constitution; and (6) the home is sacred, and our computers are intensely private, and, thus, the balance between privacy and law enforcement needs is best served by a more probable than not standard of probable cause. The defendant's arguments leave us unpersuaded.

It is well settled that, under the Connecticut constitution, like the federal constitution, "[p]roof of probable cause requires less than proof by a preponderance of the evidence . . . ." (Citation omitted; internal quotation marks omitted.) *State* v. *Shields*, supra, 308 Conn. 689–90. Indeed, the defendant cites a dozen cases in which we have made this observation in various contexts, including cases involving probable cause for search warrants. See, e.g., id. (probable cause for search warrant); *State* v. *Johnson*, 286 Conn. 427, 435, 944 A.2d 297 (probable cause for warrantless felony arrest), cert. denied, 555 U.S. 883, 129 S. Ct. 236, 172 L. Ed. 2d 144 (2008); *State* v. *Brown*, 279 Conn. 493, 523, 903 A.2d 169 (2006) (probable cause under "plain view" doctrine); *State* v. *Munoz*, 233 Conn. 106, 135, 659 A.2d 683 (1995) (probable cause at statutory hearing in probable cause).

We recognize, of course, that we need not interpret the Connecticut constitution the same way the United States Supreme Court interprets the federal constitution. *State* v. *Dukes*, 209 Conn. 98, 113, 547 A.2d 10 (1988) ("this court has never considered itself bound to adopt the federal interpretation in interpreting the Connecticut constitution"). We are also mindful of the fact that, as the defendant points out, in other contexts, we have interpreted article first, § 7, of the Connecticut constitution to provide greater protections than our citizens enjoy under the fourth amendment to the

United States constitution. See, e.g., *State* v. *Marsala*, 216 Conn. 150, 167–71, 579 A.2d 58 (1990) (rejecting "good faith" exception to exclusionary rule recognized by United States Supreme Court in *United States* v. *Leon*, 468 U.S. 897, 104 S. Ct. 3405, 82 L. Ed. 2d 677 (1984)). Nevertheless, in the absence of a compelling reason to break with the long-standing approach of this court, the federal courts, and a majority of our sister states, we decline to disturb our established probable cause standard. Because we leave in place our existing standard, and in light of our conclusion in part I of this opinion that the search warrant was supported by probable cause, the defendant cannot establish that a constitutional violation exists, and, thus, his claim must fail under the third prong of *Golding*.

The defendant argues in the alternative that, if we decline to adopt an across-the-board more probable than not standard of probable cause, we should at least do so in cases in which it is unknown at the time the warrant issues whether a crime has occurred. As we have stated previously, "probable cause is probable cause is probable cause. . . . The creation of two separate and distinct probable cause standards would represent a gratuitous and unnecessary complication of an already complicated area of constitutional law." (Emphasis omitted; internal quotation marks omitted.) *State* v. *Johnson*, supra, 286 Conn. 447. We decline to create a second, distinct probable cause standard today.

The judgment is affirmed.

In this opinion the other justices concurred.

[1] The defendant also challenged the probable cause determination on the ground that the photographs did not depict persons under the age of sixteen. He does not pursue that claim on appeal.

[2] On appeal, the parties disagree as to whether the state actually conceded, as the defendant alleges, that the descriptions of the photographs did not suggest a lascivious exhibition of the genitals. We need not resolve this dispute because, as appellate defense counsel acknowledged at oral argument, even if the state did so concede, we would not be bound by its concession. See, e.g., *Coley* v. *Hartford*, 312 Conn. 150, 169 n.14, 95 A.3d 480 (2014) ("[t]o the extent that the defendant's statements at oral argument arguably could be construed as a concession of the central issue in the present case . . . we are not bound by that concession").

[3] Despite the court's use of the phrase "more probable than not," probable cause requires "less than proof by a preponderance of the evidence . . . ." (Citation omitted; internal quotation marks omitted.) *State* v. *Shields*, 308 Conn. 678, 689–90, 69 A.3d 293 (2013), cert. denied, 571 U.S. 1176, 134 S. Ct. 1040, 188 L. Ed. 2d 123 (2014). Even if the trial court applied the more stringent standard, of course, there would be no harm to the defendant. Cf. *State* v. *Munoz*, 233 Conn. 106, 135–36, 659 A.2d 683 (1995) ("The probable cause court found that the state had established, by a preponderance of the evidence, that the defendant had committed the murder of [the victim]. This was an improper standard of proof, because probable cause is not the same as a preponderance of the evidence. This impropriety, however, could not have harmed the defendant, because proof of probable cause requires less than proof by a preponderance of the evidence. . . . The court's finding by a preponderance of the evidence, therefore, necessarily also encompassed a finding by the less demanding standard of probable cause." (Citations omitted; footnote omitted.)).

[4] Both parties note that, although the mandatory minimum sentence under § 53a-196e (c) is two years imprisonment, the judgment of conviction incorrectly calls for a mandatory minimum prison term of three years. The defendant "will seek to have the sentence corrected."

[5] We have made clear, however, that this deferential standard should not encourage an issuing court to conclude that a barely sufficient warrant application is " 'good enough' " to be upheld on review. *State* v. *Marsala*, 216 Conn. 150, 171, 579 A.2d 58 (1990); see *State* v. *Diaz*, 226 Conn. 514, 544–45, 628 A.2d 567 (1993) ("[Judges have] constitutional obligations to consider carefully the sufficiency of the affidavit supporting warrant applications. . . . [O]ur decision in . . . *Marsala* . . . in which we concluded that article first, § 7, [of the Connecticut constitution] does not contain a good faith exception to the exclusionary rule, has created an important incentive for issuing judges to scrutinize warrant applications closely because the significant cost of an error will be exclusion of the evidence seized pursuant to the warrant. This important incentive helps to ensure that the issuing judge's ex parte probable cause determination . . . will be sufficiently reliable so as to be entitled to the normal deference a reviewing court ordinarily gives to judicial factual findings." (Footnote omitted.)).

[6] We note that the federal statutory definitions of "sexually explicit conduct" at issue in these cases are very similar or identical to the Connecticut statute at issue in the present case. Compare General Statutes § 53a-193 (13) and (14) with 18 U.S.C. § 2256 (2) (A) and (B) and (8) (2012); see also, e.g., 18 U.S.C. § 2256 (2) (A) (2012) (" 'sexually explicit conduct' means . . . (v) lascivious exhibition of the genitals or pubic area of any person"). As such, the *Dost* factors are readily applicable to our state law. See *State* v. *Whited*, 506 S.W.3d 416, 433, 437 (Tenn. 2016) (rejecting use of *Dost* factors in Tennessee but citing cases from Arkansas, Louisiana, Massachusetts, Mississippi, Nebraska, New Hampshire, South Dakota, Texas, and Utah applying *Dost* factors to each state's respective laws).

[7] It is well established that nudity alone is not pornographic, even when it comes to children. See, e.g., *United States* v. *Doyle*, 650 F.3d 460, 473 (4th Cir. 2011) ("mere . . . nudity . . . even child nudity, does not constitute child pornography [under] Virginia law"); *United States* v. *Hill*, supra, 459 F.3d 970 ("not all images of nude children are pornographic"); *United States* v. *Amirault*, supra, 173 F.3d 33 ("mere nudity" does not make image lascivious under federal law).

[8] In *Griesbach*, the search warrant was based on a suspected violation of the Wisconsin child pornography statute. *United States* v. *Griesbach*, supra, 540 F.3d 655. The Wisconsin definition of "sexually explicit conduct" is nearly identical to both the Connecticut and federal statutes. See Wis. Stat. § 948.01 (7) (2007–2008).

[9] In *Shelton*, the search warrant was based on a suspected violation of the Indiana child pornography statute. *United States* v. *Shelton*, supra, 418 Fed. Appx. 515. At the time, the Indiana statute defined "sexual conduct" in relevant part as "exhibition of the uncovered genitals intended to satisfy or arouse the sexual desires of any person . . . ." Ind. Code Ann. § 35-42-4-4 (a) (LexisNexis 2004).

[10] The following additional facts are not in dispute on appeal and further support a finding of probable cause. First, the defendant concedes that Lussier "appears to be a 'citizen-informant' of the type whose veracity is generally assumed . . . ." (Footnote omitted.) See, e.g., *State* v. *Daley*, 189 Conn. 717, 724, 458 A.2d 1147 (1983) ("[i]t is generally agreed . . . that [it is unnecessary] to establish veracity when the information comes from an average citizen who is in a position to supply information by virtue of having been a crime victim or a witness" (internal quotation marks omitted)). Second, on the basis of Lussier's experience as a secondary schoolteacher, the issuing judge could credit Lussier's statement that the people depicted in the photographs were young children. Third, the affiants averred, based on their knowledge, training, and experience, that computer files or their remnants may be recovered from a computer even years after they are viewed or deleted. Thus, even if the defendant had attempted to delete the photographs, the police would still be able to find evidence of them on his computers.