******************************************************

The "officially released" date that appears near the beginning of an opinion is the date the opinion will be published in the Connecticut Law Journal or the date it is released as a slip opinion. The operative date for the beginning of all time periods for the filing of postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying an opinion that appear in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced or distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

# STATE OF CONNECTICUT *v.* MICHAEL INZITARI
## (SC 21008)

McDonald, D'Auria, Mullins, Ecker,
Alexander and Dannehy, Js.*

*Syllabus*

Pursuant to statute ((Rev. to 2019) § 53a-193 (13)), "child pornography" means "any visual depiction . . . of sexually explicit conduct, where the production of such visual depiction involves the use of a person under sixteen years of age engaging in sexually explicit conduct . . . ."

Pursuant further to statute ((Rev. to 2019) § 53a-193 (14)), "sexually explicit conduct" means "actual or simulated (A) sexual intercourse . . . (B) bestiality, (C) masturbation, (D) sadistic or masochistic abuse, or (E) lascivious exhibition of the genitals or pubic area of any person."

The defendant appealed from his conviction of possession of child pornography in the first degree. The defendant claimed, inter alia, that the evidence was insufficient to support his conviction because the state was required to prove under the applicable statute ((Rev. to 2019) § 53a-196d (a) (1)) that he had possessed fifty or more images of child pornography and thirteen of the fifty-seven images in evidence depicted child nudity that constituted protected expression under the first amendment to the United States constitution rather than sexually explicit conduct, as defined by § 53a-193 (14). The defendant also claimed, inter alia, that the trial court had improperly instructed the jury that it could consider the six factors articulated in *United States* v. *Dost* (636 F. Supp. 828) in determining whether the images in evidence depicted a lascivious exhibition of the genitals or pubic area for purposes of § 53a-193 (14) (E). *Held*:

The evidence was sufficient to support the defendant's conviction of possessing fifty or more visual depictions of child pornography, this court having determined that at least eleven of the thirteen challenged images depicted a lascivious exhibition of a child's or children's genitals or pubic areas and, thus, constituted child pornography under § 53a-193 (13) and (14), and, accordingly, the state met its burden of proving that the defendant had possessed a total of fifty-five images of child pornography.

This court determined that the first five *Dost* factors—whether the focal point of the visual depiction is on the child's genitalia or pubic area; whether the setting of the visual depiction is sexually suggestive; whether the child is depicted in an unnatural pose or in inappropriate attire, considering the age of the child; whether the child is fully or partially clothed, or nude; and

---

* The listing of judges reflects their seniority status on this court as of the date of oral argument.

whether the visual depiction suggests sexual coyness or a willingness to engage in sexual activity—are helpful in assessing whether a depiction is a lascivious exhibition, but they should not be used to define the term "lascivious exhibition" and are simply nonexhaustive considerations that may help in assessing whether a depiction is a lascivious exhibition.

This court also determined that the sixth *Dost* factor, whether the visual depiction is intended or designed to elicit a sexual response in the viewer, should not be considered for the purpose of determining whether an image constitutes child pornography under this state's child pornography statutes, as Connecticut law does not make possession of child pornography turn on the subjective reaction of a particular viewer.

The trial court's instruction to the jury that it could consider the *Dost* factors, including the sixth factor, in determining whether an image depicted a lascivious exhibition of the genitals or pubic area was not improper, this court having determined that it was not reasonably probable that this instruction misled the jury when the court did not expressly instruct the jury to focus on the subjective response of the viewer and instructed the jury that it was not obligated to consider any of the *Dost* factors.

The trial court did not err in declining the defense's request for a specific unanimity instruction directing the jurors that they had to be unanimous as to which fifty images constituted child pornography and into which of the five categories of sexually explicit conduct set forth in § 53a-193 (14) each of those images fell.

The trial court did not abuse its discretion in admitting into evidence certain exhibits that showed the file names of two images that had been deleted from the defendant's cell phone and that were associated with the defendant's email address, as those exhibits were probative of the issue of whether the defendant had knowledge that he possessed child pornography on his phone, the defendant failed to demonstrate unfair prejudicial impact to counter the substantial probative value of the exhibits, and the trial court took measures to mitigate any potential undue prejudice.

Argued September 18, 2024—officially released January 21, 2025

*Procedural History*

Two part substitute information charging the defendant, in the first part, with the crime of possession of child pornography in the first degree and, in the second part, with being a persistent felony offender, brought to the Superior Court in the judicial district of New Britain, where the first part of the information was tried to the jury before *Baldini, J.*; verdict and judgment of guilty of possession of child pornography in the first

degree; thereafter, the state withdrew the second part of the information, and the defendant appealed. *Affirmed.*

*Conrad Ost Seifert*, assigned counsel, for the appellant (defendant).

*Danielle Koch*, assistant state's attorney, with whom, on the brief, were *Christian Watson*, state's attorney, *Gregory Borrelli*, assistant state's attorney, and *Melissa L. Streeto*, former senior assistant state's attorney, for the appellee (state).

*Opinion*

DANNEHY, J. The defendant, Michael Inzitari, was convicted, following a jury trial, of one count of possessing child pornography in the first degree in violation of General Statutes (Rev. to 2019) § 53a-196d (a) (1),[1] which requires proof that the accused possessed fifty or more visual depictions of child pornography. On appeal, the defendant claims that (1) the evidence was insufficient to support his conviction, (2) the court improperly instructed the jury that it could consider the so-called *Dost*[2] factors in determining whether the images introduced by the state constituted a lascivious exhibition of the genitals or pubic area,[3] (3) the court

_____

[1] We note that references in this opinion to General Statutes §§ 53a-193 (13) and 53a-196d (a) (1) are to the 2019 revision of those statutes. Those statutes were recently amended by No. 24-118, § 4 of the 2024 Public Acts, effective October 1, 2024, which made technical changes to the statutes by changing the term "child pornography" to "child sexual abuse material."

[2] *United States* v. *Dost*, 636 F. Supp. 828 (S.D. Cal. 1986), aff'd, 813 F.2d 1231 (9th Cir. 1987), and aff'd sub nom. *United States* v. *Wiegand*, 812 F.2d 1239 (9th Cir.), cert. denied, 484 U.S. 856, 108 S. Ct. 164, 98 L. Ed. 2d 118 (1987).

[3] Whether an image constitutes child pornography under our possession of child pornography statutes turns, in part, on whether an image depicts a child engaging in "[s]exually explicit conduct," which our legislature has defined in relevant part as a "lascivious exhibition of the genitals or pubic area of any person." General Statutes (Rev. to 2019) § 53a-193 (14). As will be discussed in greater detail in this opinion, the so-called *Dost* factors stem from the decision of the United States District Court for the Southern District of California in *United States* v. *Dost*, 636 F. Supp. 828 (S.D. Cal. 1986), aff'd, 813 F.2d 1231 (9th Cir. 1987), and aff'd sub nom. *United States* v.

erred in not giving a unanimity instruction, and (4) the court abused its discretion in admitting two of the state's exhibits. We disagree and affirm the judgment of the trial court.

The underlying facts of this case are straightforward. The New Britain Police Department obtained a search warrant for the defendant's cell phone. After locating the device, the state conducted a cell phone extraction and discovered images of suspected child pornography on the cell phone and the memory card within it. The defendant was subsequently charged with knowingly possessing fifty or more visual depictions of child pornography in violation of § 53a-196d (a) (1).

At trial, the state introduced fifty-seven images in support of its case. Each image was made an exhibit, and the images were collectively presented to the jury in a binder. After the prosecutor rested the state's case-in-chief, defense counsel moved for a judgment of acquittal, arguing that the state had failed to prove that the defendant possessed the fifty or more images of child pornography required to convict him under § 53a-196d (a) (1) because numerous images introduced by the state did not depict sexual activity. The court denied the motion, concluding that the jury reasonably could find that the state had proven all of the elements of the offense charged. Over defense counsel's objection, the court included in its instructions to the jury that it "may, but [was] not obligated to, consider" the six *Dost* factors. The jury later found the defendant guilty of the

*Wiegand*, 812 F.2d 1239 (9th Cir.), cert. denied, 484 U.S. 856, 108 S. Ct. 164, 98 L. Ed. 2d 118 (1987), in which the court identified six nonexhaustive factors to help it evaluate whether a visual depiction was a "lascivious exhibition of the genitals or pubic area" under 18 U.S.C. § 2255 (2) (E) (1982), now codified at 18 U.S.C. § 2256 (2) (A) (v) (2018). Many courts around the country have used or approved these factors to help evaluate whether an image depicts a "lascivious exhibition" and, thus, constitutes child pornography.

single charge against him, and the court sentenced him to eighteen and one-half years of incarceration, five of which were mandatory.[4] The defendant appealed from the judgment of conviction to the Appellate Court, and we transferred the appeal to this court pursuant to General Statutes § 51-199 (c) and Practice Book § 65-1.

## I

The defendant first claims that there was insufficient evidence to support his conviction of possessing fifty or more visual depictions of child pornography under § 53a-196d (a) (1) because thirteen of the fifty-seven images introduced by the state at trial do not constitute child pornography.[5] He contends that, although the thirteen images depict nude children, they do not depict sexually explicit conduct. Nudity, without more, he argues, is protected expression under the first amendment to the United States constitution. In arguing that these images are protected expression under the first amendment, the defendant also challenges the legal framework employing the *Dost* factors used in many jurisdictions to assess whether a visual depiction constitutes child pornography. He argues that the jury should not have been instructed on the *Dost* factors because those factors should not be used to adjudicate whether an image depicts a lascivious exhibition of the genitals or pubic area. We address each of his arguments in turn.

## A

For an image to constitute child pornography for purposes of § 53a-196d (a) (1), it must depict "sexually

---

[4] The state initially charged the defendant, in a part B information, as being a persistent serious felony offender in violation of General Statutes § 53a-40 (c) and (k). Prior to sentencing, however, the state withdrew the part B information. The defendant, therefore, was sentenced solely for his conviction under § 53a-196d.

[5] Specifically, the defendant contends that state exhibits 33, 35, 36, 37, 46, 49, 50, 70, 71, 72, 75, 77, and 83 do not constitute child pornography.

explicit conduct, where the production of such visual depiction involves the use of a person under sixteen years of age engaging in sexually explicit conduct . . . .” General Statutes (Rev. to 2019) § 53a-193 (13). The legislature defines “[s]exually explicit conduct” as “actual or simulated (A) sexual intercourse, including genital-genital, oral-genital, anal-genital or oral-anal physical contact, whether between persons of the same or opposite sex, or with an artificial genital, (B) bestiality, (C) masturbation, (D) sadistic or masochistic abuse, or (E) lascivious exhibition of the genitals or pubic area of any person.” General Statutes (Rev. to 2019) § 53a-193 (14).

The defendant contends that the thirteen images in question clearly do not depict sexual intercourse, bestiality, masturbation, or sadistic or masochistic abuse. He argues that this case turns on the meaning of “lascivious exhibition of the genitals or pubic area” and that none of the thirteen images in question falls within that category. We agree with the defendant that the thirteen images clearly do not fall within the categories of sexual intercourse, bestiality, masturbation, or sadistic or masochistic abuse.[6] The question of sufficiency, therefore, turns on whether the thirteen images each depict a “lascivious exhibition of the genitals or pubic area,” and, thus, constitute child pornography.[7]

In reviewing a sufficiency of the evidence claim, we ordinarily apply a two part test. See, e.g., *State* v. *Cook*, 287 Conn. 237, 254, 947 A.2d 307, cert. denied, 555 U.S.

---

[6] The state did not concede in its appellate briefing or at oral argument before this court that the thirteen images in question do not exhibit sexual intercourse, bestiality, masturbation, or sadistic or masochistic abuse. The state “declines to take a position on this matter because it is unnecessary to the resolution of this claim.” We disagree that it is unnecessary. Whether the images in question exhibit sexual intercourse, bestiality, masturbation, or sadistic or masochistic abuse is part and parcel of the defendant’s claim that none of the thirteen images contains sexually explicit conduct.

[7] The age of the victims is not at issue in this appeal.

970, 129 S. Ct. 464, 172 L. Ed. 2d 328 (2008). We first "construe the evidence in the light most favorable to sustaining the verdict." (Internal quotation marks omitted.) *State* v. *Gary S.*, 345 Conn. 387, 398, 285 A.3d 29 (2022). We then "determine whether [on] the facts so construed and the inferences reasonably drawn therefrom the [jury] reasonably could have concluded that the cumulative force of the evidence established guilt beyond a reasonable doubt." (Internal quotation marks omitted.) *State* v. *Dawson*, 340 Conn. 136, 146, 263 A.3d 779 (2021).

In certain contexts, however, including those like the present case that implicate the first amendment, we are required to apply a de novo standard of review. See *DiMartino* v. *Richens*, 263 Conn. 639, 661–62, 822 A.2d 205 (2003). The presence of first amendment concerns obligates an appellate court "to make an independent examination of the whole record in order to make sure that the judgment does not constitute a forbidden intrusion on the field of free expression." (Internal quotation marks omitted.) *State* v. *Michael R.*, 346 Conn. 432, 463, 291 A.3d 567, cert. denied,      U.S.     , 144 S. Ct. 211, 217 L. Ed. 2d 89 (2023); see also, e.g., *Miller* v. *California*, 413 U.S. 15, 25, 93 S. Ct. 2607, 37 L. Ed. 2d 419 (1973) (independent appellate review of finding of obscenity). This rule of "independent review" is in recognition that an appellate "[c]ourt's duty is not limited to the elaboration of constitutional principles; we must also in proper cases review the evidence to make certain that those principles have been constitutionally applied." (Internal quotation marks omitted.) *Bose Corp.* v. *Consumers Union of United States, Inc.*, 466 U.S. 485, 508, 104 S. Ct. 1949, 80 L. Ed. 2d 502 (1984). When a defendant challenges certain images as falling outside the definition of child pornography, rendering them protected expression under the first amendment, our independent review requires us to examine the four corners of each

image to determine whether each, in fact, constitutes child pornography. See, e.g., *State* v. *Sawyer*, 335 Conn. 29, 45, 225 A.3d 668 (2020) (reviewing "the descriptions of . . . two photographs" to determine whether there was probable cause that defendant possessed lascivious images of children); see also, e.g., *United States* v. *Villard*, 885 F.2d 117, 125 (3d Cir. 1989) (court must view photograph itself to determine whether it is child pornography).

With our standard of review in mind, we begin with our construction of the relevant law and then consider the defendant's challenge to the sufficiency of the evidence thereunder. We begin with the text of § 53a-193 (14), which defines "[s]exually explicit conduct" to include, inter alia, "lascivious exhibition of the genitals or pubic area of any person." See *State* v. *Dudley*, 332 Conn. 639, 645, 212 A.3d 1268 (2019) (explaining that General Statutes § 1-2z instructs that meaning of statute shall, in first instance, be ascertained from text of statute itself and its relationship to other statutes). We previously have explained that § 53a-193 (14) does not define "lascivious exhibition of the genitals or pubic area" but that Black's Law Dictionary defines "lascivious" as " 'tending to excite lust; lewd; indecent; obscene.' " *State* v. *Sawyer*, supra, 335 Conn. 39, quoting Black's Law Dictionary (11th Ed. 2019) p. 1053. Other than providing this definition of "lascivious" and offering a few nonexhaustive factors to consider in determining whether an image depicts a "lascivious exhibition," we have not had further occasion, until now, to analyze the statutory provision to determine whether a more precise meaning of the phrase "lascivious exhibition" can be ascertained. See *State* v. *Sawyer*, supra, 39.

In analyzing this language, we observe that standard dictionaries are consistent with the Black's Law Dictionary definition of "lascivious," defining the term as "[g]iven to or expressing lust; lecherous" or "[e]xciting

sexual desires; salacious"; The American Heritage College Dictionary (4th Ed. 2004) p. 781; or "lewd" or "lustful . . . ." Merriam-Webster's Collegiate Dictionary (11th Ed. 2003) p. 701. The term "lewd" means "[p]reoccupied with sex and sexual desire; lustful." The American Heritage College Dictionary, supra, p. 796. In other words, the term "lascivious" connotes something sexual in nature.

This meaning is reinforced by the fact that the word "lascivious" in § 53a-193 (14) modifies the "exhibition" of certain private parts. We recently explained that "exhibition" is defined as " 'an act or instance of exhibiting' and 'exhibit' as 'to present to view . . . to show or display outwardly [especially] by visible signs or actions . . . .' Merriam-Webster's Collegiate Dictionary [supra] pp. 437–38." *State* v. *Michael R.*, supra, 346 Conn. 459.

Reading the terms "lascivious" and "exhibition" together, and considering them within the context of the child pornography statute, they establish that an image depicts the use of a child engaged in a "lascivious exhibition" under § 53a-193 (14) when the child's genitals or pubic area is displayed in a sexual manner. Indeed, under the definition of "child pornography" set forth in § 53a-193 (13), it is the photographed child who must be depicted as engaged in "[s]exually explicit conduct" and, thus, the child who must be depicted making a "lascivious exhibition . . . ." General Statutes (Rev. to 2019) § 53a-193 (13) and (14).

In evaluating whether an image depicts a "lascivious exhibition," many courts, including this court, have used or approved the nonexhaustive factors set forth in *United States* v. *Dost*, 636 F. Supp. 828, 832 (S.D. Cal. 1986), aff'd, 813 F.2d 1231 (9th Cir. 1987), and aff'd sub nom. *United States* v. *Wiegand*, 812 F.2d 1239 (9th Cir.), cert. denied, 484 U.S. 856, 108 S. Ct. 164, 98 L. Ed. 2d

118 (1987).[8] The *Dost* factors ask whether (1) the focal point of the visual depiction is on the child's genitalia or pubic area, (2) the setting of the visual depiction is sexually suggestive, i.e., in a place or pose generally associated with sexual activity, (3) the child is depicted in an unnatural pose, or in inappropriate attire, considering the age of the child, (4) the child is fully or partially clothed, or nude, (5) the visual depiction suggests sexual coyness or a willingness to engage in sexual activity, and (6) the visual depiction is intended or designed to elicit a sexual response in the viewer. Id., 832.

In *State* v. *Sawyer*, supra, 335 Conn. 41, this court described the *Dost* factors as being "generally relevant" and providing "some guidance" in assessing whether a display is a lascivious exhibition. (Internal quotation marks omitted.) Although *Sawyer* used the *Dost* factors to determine whether descriptions of images contained in a search warrant affidavit were sufficient to establish probable cause that the defendant possessed child pornography, we signaled that the factors were helpful,

[8] The federal definition of "sexually explicit conduct" is substantially similar to Connecticut's statutory definition. Compare General Statutes (Rev. to 2019) § 53a-193 (13) and (14) with 18 U.S.C. § 2256 (2) (A) and (B) and (8) (2018). Many federal courts have used or approved the *Dost* factors to assist in determining whether a depiction is a "lascivious exhibition" within the meaning of the federal child pornography statutes. See, e.g., *United States* v. *Sanders*, 107 F.4th 234, 261 (4th Cir. 2024); *United States* v. *Petroske*, 928 F.3d 767, 773 (8th Cir. 2019), cert. denied,      U.S.     , 140 S. Ct. 973, 206 L. Ed. 2d 129 (2020); *United States* v. *Isabella*, 918 F.3d 816, 831 (10th Cir. 2019), cert. denied,      U.S.     , 140 S. Ct. 2586, 206 L. Ed. 2d 508 (2020); *United States* v. *Hunter*, 720 Fed. Appx. 991, 996 (11th Cir. 2017); *United States* v. *Perkins*, 850 F.3d 1109, 1121 (9th Cir. 2017); *United States* v. *Steen*, 634 F.3d 822, 826 (5th Cir. 2011); *United States* v. *Brown*, 579 F.3d 672, 680 (6th Cir. 2009), cert. denied, 558 U.S. 1133, 130 S. Ct. 1106, 175 L. Ed. 2d 920 (2010); *United States* v. *Rivera*, 546 F.3d 245, 250 (2d Cir. 2008), cert. denied, 555 U.S. 1204, 129 S. Ct. 1395, 173 L. Ed. 2d 644 (2009); *United States* v. *Amirault*, 173 F.3d 28, 31 (1st Cir. 1999); *United States* v. *Knox*, 32 F.3d 733, 745–46 (3d Cir. 1994), cert. denied, 513 U.S. 1109, 115 S. Ct. 897, 130 L. Ed. 2d 782 (1995). But see *United States* v. *Hillie*, 39 F.4th 674, 688 (D.C. Cir. 2022); *United States* v. *Price*, 775 F.3d 828, 840 (7th Cir. 2014).

more broadly, in determining whether a visual depiction is lascivious. See id.; see also *State* v. *Michael R.*, supra, 346 Conn. 467 ("[a]s a matter of first impression in *Sawyer*, we adopted a case specific approach to assessing whether a display is lascivious and stated that 'the *Dost* factors are generally relevant and provide some guidance' in this evaluation"). We made clear, however, that "these factors are neither comprehensive nor necessarily applicable in every situation" and that the "inquiry will always be [case specific]." (Internal quotation marks omitted.) *State* v. *Sawyer*, supra, 41, quoting *United States* v. *Amirault*, 173 F.3d 28, 32 (1st Cir. 1999).

Furthermore, and particularly relevant to the fourth *Dost* factor—whether the child is fully or partially clothed, or nude—we explained that "nudity alone, even when it comes to images of children, is not sufficient to constitute child pornography . . . ." *State* v. *Michael R.*, supra, 346 Conn. 467 n.29. That is because "depictions of nudity, without more, constitute protected expression" under the first amendment. *Osborne* v. *Ohio*, 495 U.S. 103, 112, 110 S. Ct. 1691, 109 L. Ed. 2d 98 (1990). This caveat ensures that persons are not penalized for viewing or possessing otherwise innocuous nude photographs, a classic example of which is a family snapshot of a child in a bathtub. See, e.g., *United States* v. *Hill*, 459 F.3d 966, 970 (9th Cir. 2006) ("Child pornography is a particularly repulsive crime, but not all images of nude children are pornographic. For example, 'a family snapshot of a nude child bathing presumably would not' be criminal."), cert. denied, 549 U.S. 1299, 127 S. Ct. 1863, 167 L. Ed. 2d 353 (2007); *United States* v. *Knox*, 32 F.3d 733, 750 (3d Cir. 1994) ("[n]o one seriously could think that . . . an innocuous family snapshot of a naked child in the bathtub violates the child pornography laws"), cert. denied, 513 U.S. 1109, 115 S. Ct. 897, 130 L. Ed. 2d 782 (1995). Although a "lascivious exhibition" under § 53a-193 (14) requires

more than mere nudity, the fourth *Dost* factor is a relevant and helpful inquiry when considered together with the other factors in evaluating whether the exhibition of a child's genitals or pubic area is displayed in a sexual manner. See *State* v. *Michael R.*, supra, 461 (assuming that "nude performance" under § 53a-193 (4) requires sexual component to survive vagueness challenge).

The defendant contends that the *Dost* factors are "problematic" and should not be used to adjudicate lasciviousness. Although he argues in a conclusory manner that all six factors should not be considered, his primary objection is to the sixth *Dost* factor, which asks whether the visual depiction is intended or designed to elicit a sexual response in the viewer. He contends that the sixth factor improperly adds a subjective component to the evaluation of lasciviousness that requires a fact finder to determine whether the images in question were intended to elicit a sexual response in the viewer who is a pedophile.

The state argues that is precisely what is required of the final factor. It contends that lasciviousness is not a characteristic of the photographed child but of the exhibition that the photographer sets up for an audience consisting of himself and like-minded pedophiles. It states that we must determine whether an image was intended or designed to elicit a sexual response in *the viewer*—the viewer being the pedophile viewer, not the average viewer. In other words, the state argues that a fact finder must step into the shoes—or, rather, into the mind—of a pedophile to make a lasciviousness determination.

We are cognizant that the sixth *Dost* factor has been the subject of some criticism over the years. One court has labeled it the "most confusing and contentious of the *Dost* factors," asking whether it is a "subjective or objective standard, and should we be evaluating the

response of an average viewer or the specific defendant in this case? Moreover, is the intent to elicit a sexual response analyzed from the perspective of the photograph's composition, or from extrinsic evidence (such as where the photograph was obtained, who the photographer was, etc.)?" *United States* v. *Amirault*, supra, 173 F.3d 34. Another court has stated that it is the "most difficult [factor] to apply . . . ." *United States* v. *Steen*, 634 F.3d 822, 827–28 (5th Cir. 2011).

This lack of clarity has resulted in courts treating the sixth factor in markedly different ways. Some courts state that the sixth factor is a subjective consideration for the court in determining whether the visual depiction was intended to elicit a sexual response in the defendant himself or a like-minded pedophile. See, e.g., *United States* v. *Helton*, 302 Fed. Appx. 842, 849 (10th Cir. 2008) ("our task is simply to determine whether [the defendant] intended the videotape he produced to elicit a sexual response in the viewer—defined as himself and like-minded individuals"), cert. denied, 556 U.S. 1199, 129 S. Ct. 2029, 173 L. Ed. 2d 1116 (2009); *United States* v. *Wiegand*, 812 F.2d 1239, 1244 (9th Cir. 1987) ("[i]t was a lascivious exhibition because the photographer arrayed it to suit his peculiar lust"), cert. denied, 484 U.S. 856, 108 S. Ct. 164, 98 L. Ed. 2d 118 (1987). Other courts, including the United States Court of Appeals for the Second Circuit, have put a judicial gloss on the sixth factor by treating it as informing an objective inquiry. See, e.g., *United States* v. *Spoor*, 904 F.3d 141, 150 (2d Cir. 2018) ("[w]e . . . clarify that the sixth *Dost* factor . . . should be considered by the jury in a child pornography production case only to the extent that it is relevant to the jury's analysis of the five other factors and the objective elements of the image"), cert. denied, 586 U.S. 1120, 139 S. Ct. 931, 202 L. Ed. 2d 656 (2019); *United States* v. *Villard*, supra, 885 F.2d 125 ("[w]e believe that the sixth *Dost* factor, rather than being a

separate substantive inquiry about the photographs, is useful as another way of inquiring into whether any of the other five *Dost* factors are met"). And other courts have taken their own unique approach or have outright rejected not only the sixth but all of the *Dost* factors. See, e.g., *United States* v. *Hillie*, 39 F.4th 674, 688–89 (D.C. Cir. 2022) (concluding that *Dost* factors are problematic and inconsistent with federal child pornography statutes); *United States* v. *Brown*, 579 F.3d 672, 683 (6th Cir. 2009) (adopting " 'limited context' " test), cert. denied, 558 U.S. 1133, 130 S. Ct. 1106, 175 L. Ed. 2d 920 (2010).

Although the sixth *Dost* factor, which asks whether the image "is intended or designed to elicit *a sexual response in the viewer*"; (emphasis added) *United States* v. *Dost*, supra, 636 F. Supp. 832; does not specify who the "viewer" is, it certainly implies that a pedophile viewer's subjective response to an image may be relevant. The court in *Dost* explained that it needed to look at the combined effect of the setting, attire, pose, and emphasis on the genitals to determine whether the photograph was "designed to elicit a sexual response in the viewer, albeit perhaps not the 'average viewer,' but perhaps in the pedophile viewer." Id. We must therefore determine whether a pedophile viewer's subjective response to an image is relevant in considering whether an image is a lascivious exhibition under our possession of child pornography statutes.

In answering this question, we first look to the statute itself. As we previously explained, under the definition of "child pornography" set forth in § 53a-193 (13), it is the photographed child who must be depicted as engaged in "[s]exually explicit conduct," and thus the child who must be depicted making a "lascivious exhibition . . . ." General Statutes (Rev. to 2019) § 53a-193 (13) and (14). The focus therefore must be on the objective aspects of the photograph itself, not on the subjec-

tive reaction of a particular viewer. Indeed, a particular viewer may be sexually aroused "by photo[graphs] of children at a bus stop wearing winter coats, but these are not pornographic." *United States* v. *Steen*, supra, 634 F.3d 829 (Higginbotham, J., concurring). And, if subjective reaction were relevant, "a sexual deviant's quirks could turn a Sears catalog into pornography." *United States* v. *Amirault*, supra, 173 F.3d 34.

Second, it is not readily apparent how the sixth factor is relevant or helpful to a possession of child pornography case, like the present case, in which there is no allegation that the defendant himself located the victims, arranged or posed the scenes, or otherwise produced the images. See *United States* v. *Rivera*, 546 F.3d 245, 252 (2d Cir. 2008) ("[t]he sixth *Dost* factor is not easily adapted to a possession case"), cert. denied, 555 U.S. 1204, 129 S. Ct. 1395, 173 L. Ed. 2d 644 (2009). Notably, many of the federal cases that analyze the sixth factor do so in circumstances in which the defendant was charged with the *production* of child pornography, not solely *possession* of it, which may explain why those courts looked to the sixth factor. *Dost* itself was a prosecution for the *production* of child pornography. *United States* v. *Dost*, supra, 636 F. Supp. 832.

Taking this all into account, we are persuaded that the sixth *Dost* factor should not be considered in determining whether an image is child pornography under our possession of child pornography statutes. Connecticut law does not make possession of child pornography turn on the subjective reaction of a particular viewer. And, although some courts have attempted to make the sixth factor relevant to a possession case by putting a judicial gloss on it that would make it an objective inquiry relevant to an analysis of the other five factors, we think this approach complicates, rather than elucidates, what is required under our law.

Although we conclude that the sixth *Dost* factor is not an appropriate consideration in a possession of child pornography case, we still believe that the first five factors can be helpful in assessing whether a depiction is a lascivious exhibition. They provide jurors and judges with neutral references and considerations for making that determination. As the United States Court of Appeals for the Second Circuit has aptly explained, neutral considerations "avoid decisions based on individual values or the revulsion potentially raised in a child pornography prosecution," and they "mitigate the risk that jurors will react to raw images in a visceral way . . . ." *United States* v. *Rivera*, supra, 546 F.3d 252–53. Nevertheless, the first five *Dost* factors do not define the term "lascivious exhibition" and should not be used in that manner. See *State* v. *Sawyer*, supra, 335 Conn. 41 (*Dost* factors "should not be rigidly or mechanically applied"). They simply are nonexhaustive considerations that may help the fact finder evaluate whether the image depicts a "lascivious exhibition," that is, whether a child's genitals or pubic area is displayed in a sexual manner.

With those clarifications in mind, we turn our attention to the defendant's sufficiency claim. In the present case, for the defendant's sufficiency challenge to succeed, we must agree with him that at least eight of the thirteen challenged images do not constitute a lascivious exhibition of the genitals or pubic area and, thus, are protected expression under the first amendment. That would bring the state's evidence to fewer than fifty visual depictions, as required by § 53a-196d (a) (1).

Each of the images depicts one or more nude male children, with nearly all of the images prominently depicting the children's genitals or pubic areas. At least eight of the images depict a child lying on a bed or mattress. See *United States* v. *Villard*, supra, 885 F.2d 124 ("[b]eds and mattresses are often associated with

sexual activity"). Many of the images depict multiple nude children, with those children located or positioned in close proximity to one another. At least one photograph depicts a child with an erection, with the child being the focal point of the image.

Although there are two images that we think are a relatively close call—specifically, exhibits 37 and 50—we have little difficulty concluding that there was sufficient evidence to support the defendant's conviction of possessing fifty or more visual depictions of child pornography. Indeed, even if we assume that those two images constitute protected expression, at least eleven of the thirteen images challenged by the defendant clearly go beyond the mere depiction of nudity and constitute a "lascivious exhibition" under § 53a-193 (14). Because that brings the number of visual depictions of child pornography to more than fifty, the defendant's sufficiency claim fails.[9]

## B

The defendant next claims that the court improperly instructed the jury that it could consider the *Dost* factors in determining whether an image depicted a lascivious exhibition of the genitals or pubic area. He contends that the *Dost* factors are improper considerations for the reasons that he raised in the context of his sufficiency challenge, but he adds that the *Dost* factors, like many multifactor tests, take the depth and complexity of human thought and perspective away from the jury and replace those considerations with a rote and simplistic "recipe" to follow. He also suggests that the *Dost* factors confuse or mislead juries. We are not persuaded.[10]

[9] The defendant does not challenge forty-four of the images introduced by the state. See footnote 4 of this opinion. Because we conclude that a total of fifty-five images in evidence support the defendant's conviction under § 53a-196d (a) (1), the quantity element is satisfied.

[10] The defendant objected to the state's request to charge on the *Dost* factors and defense counsel reiterated this objection at the charge conference The court ultimately granted the state's request and instructed the jury on the *Dost* factors.

Our standard of review concerning claims of nonconstitutional instructional error is well settled.[11] "When reviewing the challenged jury instruction . . . we must adhere to the well settled rule that a charge to the jury is to be considered in its entirety, read as a whole, and judged by its total effect rather than by its individual component parts. . . . [T]he test of a court's charge is not whether it is as accurate [on] legal principles as the opinions of a court of last resort but whether it fairly presents the case to the jury in such a way that injustice is not done to either party under the established rules of law. . . . As long as [the instructions] are correct in law, adapted to the issues and sufficient for the guidance of the jury . . . we will not view the instructions as improper." (Internal quotation marks omitted.) *State* v. *Denby*, 235 Conn. 477, 484–85, 668 A.2d 682 (1995). To the extent an error has been made, the defendant has the burden of establishing that it is reasonably *probable* that the jury was misled. *State* v. *Gomes*, 337 Conn. 826, 849, 256 A.3d 131 (2021).

The trial court in the present case adopted—nearly verbatim—the *Dost* factors in its lascivious exhibition

---

[11] The defendant, without elaboration, contends that the trial court committed constitutional error by instructing the jury on the *Dost* factors. This court previously has held that instructions on the elements of an offense, a defendant's defense, the burden of proof, and the presumption of innocence implicate a defendant's constitutional rights. *State* v. *Terwilliger*, 294 Conn. 399, 411, 984 A.2d 721 (2009); *State* v. *LaBrec*, 270 Conn. 548, 557, 854 A.2d 1 (2004). The *Dost* factors, however, do not implicate these categories. Indeed, the *Dost* factors are neither elements of the offense nor are they definitional of an element. And they should not be used in such a manner. See *State* v. *Sawyer*, supra, 335 Conn. 41 (*Dost* factors "should not be rigidly or mechanically applied"). They are merely a list of potentially relevant considerations that a jury may consider in evaluating whether a particular image depicts a lascivious exhibition of the genitals or pubic area, as that element is defined. See *United States* v. *Rivera*, supra, 546 F.3d 252 (*Dost* factors are merely "neutral references and considerations to avoid decisions based on individual values or the revulsion potentially raised in a child pornography prosecution"). Accordingly, the defendant's claimed instructional error is not constitutional in nature.

instruction. The court instructed that "[l]ascivious exhibition of the genitals or pubic area is an exhibition that is lewd or lustful. In considering whether an image constitutes lascivious exhibition of the genitals or pubic area, you may, but are not obligated to, consider the following: Whether the genitals or pubic area [is] the focal point of the image; whether the setting of the image is sexually suggestive, for example, a location generally associated with sexual activity; whether the child is depicted in an unnatural pose or inappropriate attire considering his or her age; whether the child is fully or partially clothed, or nude; whether the image suggests sexual coyness or willingness to engage in sexual activity; and whether the image is intended or designed to elicit a sexual response in the viewer." In defining "[s]exually explicit conduct," which includes a "lascivious exhibition of the genitals or pubic area"; General Statutes (Rev. to 2019) § 53a-193 (14); the trial court expressly instructed the jury that "[n]udity, without more, is protected expression and does not constitute sexually explicit conduct."

In part I A of this opinion, we provided some further clarification and refinement of the statutory language and the *Dost* factors that was not available to the trial court in this case, insofar as we have concluded that the first five factors are still generally relevant and helpful to juries in determining whether an image in a possession of child pornography case depicts a lascivious exhibition but that the sixth factor should not be considered in possession of child pornography cases. We nevertheless conclude that it is not reasonably probable that the trial court's lascivious exhibition instruction, including its instruction of the sixth *Dost* factor, misled the jury. First, the court explicitly instructed the jury that it was not obligated to consider any of the *Dost* factors, much less any single factor, such as the sixth factor, by making clear that the jury "may, but

[was] not obligated to, consider the following" factors. The court's instruction, instead, appropriately focused the jury on the statutory definition of child pornography and whether the images in question depicted a lascivious exhibition of the genitals or pubic area. Second, although the trial court listed the sixth *Dost* factor, it did not expressly instruct the jury to consider the subjective response of the viewer. Rather, the instruction directed the jury to "the image" itself. It is therefore not reasonably probable that the jury was misled on this point.

Although we recognize that there are legitimate criticisms of the *Dost* factors, we think instructing jurors on the first five *Dost* factors can be helpful in possession of child pornography cases because, as we explained in part I A of this opinion, they can help mitigate the risk that jurors will react to raw images in a visceral way. The starting point for trial courts in a possession of child pornography case, however, should be on the definition of what constitutes a lascivious exhibition, and courts should instruct jurors that an image depicts the use of a child engaged in a "lascivious exhibition" under § 53a-193 (14) when the child's genitals or pubic area is displayed in a sexual manner. See part I A of this opinion. Trial courts then should determine, on a case-by-case basis, whether the factors are helpful and, to the extent they are used, ensure that the jury is instructed that the five approved *Dost* factors (1) are merely a guide, (2) are nonexhaustive and that other considerations may be relevant to the determination of whether an image depicts a lascivious exhibition, and (3) should not be applied in a rigid or mechanistic manner.

## II

The defendant next claims that his right to a unanimous jury verdict under the sixth amendment to the

United States constitution required the court to instruct the jury that it needed to be unanimous as to which fifty of the fifty-seven images in evidence fit the definition of child pornography and on precisely which category of sexually explicit conduct that each of the fifty or more images fell within. In addition, the defendant claims that, because there was a general verdict in this case, we cannot determine whether his conviction was predicated on the images that we concluded in part I A of this opinion did not depict a lascivious exhibition of the genitals or pubic area. He argues that the United States Supreme Court's decision in *Stromberg* v. *California*, 283 U.S. 359, 368, 51 S. Ct. 532, 75 L. Ed. 1117 (1931), requires that his conviction be set aside. Because the defendant's claims are premised on a claimed infringement of his constitutional rights, our review is plenary. *State* v. *Douglas C.*, supra, 345 Conn. 435.

A

The following additional procedural history is relevant to the defendant's claim. The defendant requested a specific unanimity instruction. His written request provided: "The state has alleged that the defendant has committed the offense of possession of child pornography by possessing fifty or more visual depictions of child pornography. You may find the defendant guilty of the offense only if you all unanimously agree on which of the fifty visual depictions fit the definition of child pornography as defined in these instructions. This means you may not find the defendant guilty unless you all agree that the state has proved beyond a reasonable doubt which visual depictions are child pornography and that those add up to fifty or more."

Defense counsel raised his proposed instruction again at the charge conference. He argued that, because the state is required to prove the quantity of fifty or more visual depictions beyond a reasonable doubt, the

constitution required jury unanimity regarding which specific depictions the jury found to be child pornography. He argued that his requested charge mirrored the specific unanimity charge in the form jury instructions.[12] The prosecutor objected to this request, arguing that the model instructions regarding unanimity of elements apply only when a statute provides, and the state proves, alternative ways of committing a single offense. The prosecutor explained that the state had neither charged nor adduced evidence of alternative ways by which the defendant had committed the offense. The court agreed with the prosecutor and denied the requested unanimity charge.

In the defendant's motion for a new trial, he renewed his arguments that a specific unanimity charge was required. He pointed to additional case law, including the Appellate Court's decision in *State* v. *Joseph V.*, 196 Conn. App. 712, 740, 230 A.3d 644 (2020), rev'd in part on other grounds, 345 Conn. 516, 285 A.3d 1018 (2022), arguing that a specific unanimity instruction is required even if the offense is premised on one offense, if there are multiple statutory subsections or elements of an offense. He argued that the jury was required to be unanimous as to which fifty of the fifty-seven images

---

[12] It appears that defense counsel was referencing the specific unanimity instruction regarding unanimity of elements, set forth in § 2.11-6 of the Connecticut Judicial Branch Criminal Jury Instructions, available at https://jud.ct.gov/JI/Criminal/Criminal.pdf (last visited January 10, 2025), which provides: "The state has alleged that the defendant has committed the offense of *<insert name of offense>* in two different ways, *<identify the two way[s] of committing the offense>*. You may find the defendant guilty of the offense only if you all unanimously agree on which of the two ways the defendant committed the offense. This means you may not find the defendant guilty unless you all agree that the state has proved beyond a reasonable doubt that the defendant *<insert first theory of culpability>* or you all agree that the state has proved beyond a reasonable doubt that the defendant *<insert second theory of culpability>*. Thus, in order for you to find the defendant guilty of *<insert name of offense>*, you must be unanimous as to which of the alternative ways the defendant is alleged to have committed it."

constituted child pornography and which definition of sexually explicit conduct, set forth in § 53a-193 (14), each image fell within. Otherwise, the defendant argued, a jury could find him guilty under several alternative theories of liability. The court denied his motion for a new trial.

It is beyond dispute that the jury verdict in a criminal trial must be unanimous. See, e.g., *Ramos* v. *Louisiana*, 590 U.S. 83, 92, 140 S. Ct. 1390, 206 L. Ed. 2d 583 (2020); see also id., 93 (jury unanimity applies to states via fourteenth amendment). The constitution ensures that a jury "cannot convict unless it unanimously finds that the [g]overnment has proved each *element*" of the charged crime. (Emphasis added.) *Richardson* v. *United States*, 526 U.S. 813, 817, 119 S. Ct. 1707, 143 L. Ed. 2d 985 (1999). Although a general instruction that the verdict must be unanimous will often suffice, a specific unanimity instruction can be required when, for example, an information is duplicitous. We recently explained that an information is duplicitous when it combines two or more offenses in one count and may raise unanimity concerns that generally fall into two categories: unanimity as to elements and unanimity as to instances of conduct. *State* v. *Douglas C.*, supra, 345 Conn. 425 n.1, 432–33; *State* v. *Joseph V.*, 345 Conn. 516, 530–31, 285 A.3d 1018 (2022).

The defendant contends that the charge of possessing fifty or more visual depictions of child pornography requires the jury to be unanimous on precisely which category of "sexually explicit conduct"—sexual intercourse, bestiality, masturbation, sadistic or masochistic abuse, or lascivious exhibition of the genitals or pubic area of any person—that each one of the fifty images fell within for purposes of determining whether they constituted child pornography. He essentially argues that the charge was duplicitous because these categories constitute elements of the offense, which require

jury unanimity. See *State* v. *Douglas C.*, supra, 345 Conn. 433, 432–33; *State* v. *Joseph V.*, supra, 345 Conn. 531. We therefore must determine whether each image and category of sexually explicit conduct are facts that are elements of the crime or, instead, constitute the means to the commission of an element. See *State* v. *Joseph V.*, supra, 563.

We have recognized that " 'different jurors may be persuaded by different pieces of evidence, even when they agree [on] the bottom line,' " and " 'there is no general requirement that the jury reach agreement on the preliminary factual issues [that] underlie the verdict.' " Id., 530, quoting *Schad* v. *Arizona*, 501 U.S. 624, 631–32, 111 S. Ct. 2491, 115 L. Ed. 2d 555 (1991) (opinion announcing judgment). In other words, "a . . . jury need not always decide unanimously which of several possible sets of underlying brute facts make up a particular element, say, which of several possible means the defendant used to commit an element of the crime." *Richardson* v. *United States*, supra, 526 U.S. 817. To determine whether multiple statutes, statutory provisions, or statutory clauses constitute separate elements or alternative means of committing a single element, we adopted the *Schad* approach, pursuant to which we consider the statutory language, its legislative history, the overall structure of the statute at issue, relevant legal traditions and practices, moral and practical equivalence between the alternative actus rei or mentes reae, and any other implications for unfairness associated with the absence of a specific unanimity instruction. *State* v. *Joseph V.*, supra, 345 Conn. 567–68; see also *Schad* v. *Arizona*, supra, 637.

Section 53a-196d (a) provides in relevant part that "[a] person is guilty of possessing child pornography in the first degree when such person knowingly possesses (1) fifty or more visual depictions of child pornography . . . ." As previously explained, "child

pornography" is defined in relevant part in § 53a-193 (13) as "any visual depiction . . . of sexually explicit conduct, where the production of such visual depiction involves the use of a person under sixteen years of age engaging in sexually explicit conduct . . . ." "Sexually explicit conduct" is further defined as "actual or simulated (A) sexual intercourse, including genital-genital, oral-genital, anal-genital or oral-anal physical contact, whether between persons of the same or opposite sex, or with an artificial genital, (B) bestiality, (C) masturbation, (D) sadistic or masochistic abuse, or (E) lascivious exhibition of the genitals or pubic area of any person." General Statutes (Rev. to 2019) § 53a-193 (14).

The plain language of § 53a-196d reveals that the provision under which the defendant was charged has three elements—possession of child pornography (actus reus), knowledge (mens rea), and quantity (fifty or more). It is clear that the five categories of "sexually explicit conduct" go directly to the element of whether the defendant possessed *child pornography*. The language and structure of the statute, which separately lists the different sexual conduct that must be depicted in order for an image to constitute child pornography, strongly suggest that the enumerated list simply spells out the factual means of committing that element of the offense.

An example in *Mathis* v. *United States*, 579 U.S. 500, 506, 136 S. Ct. 2243, 195 L. Ed. 2d 604 (2016), helps illustrate the point. "[S]uppose a statute requires use of a 'deadly weapon' as an element of a crime and further provides that the use of a 'knife, gun, bat, or similar weapon' would all qualify. . . . Because that kind of list merely specifies diverse means of satisfying a single element of a single crime—or otherwise said, spells out various factual ways of committing some component of the offense—a jury need not find (or a defendant admit) any particular item: A jury could con-

vict even if some jurors 'conclude[d] that the defendant used a knife' while others 'conclude[d] he used a gun,' so long as all agreed that the defendant used a 'deadly weapon.' " (Citation omitted.) Id.

The same is true with whether a particular image constitutes child pornography. The listed definitions of "sexually explicit conduct" are merely diverse means of satisfying an element of the offense, in this case, whether the defendant possessed *child pornography*. It does not matter whether one juror concluded that a particular visual depiction constituted child pornography because it depicted a lascivious exhibition and another concluded it depicted masturbation, so long as all jurors agreed that each visual depiction that the defendant possessed was child pornography. Further, the jury was not required to be unanimous as to which fifty images were relied on to satisfy the quantity element of the offense because, like the categories of sexually explicit conduct, different images are merely the means of proving the elements of the offense. See *United States* v. *Kearn*, 863 F.3d 1299, 1303 (10th Cir. 2017) ("[d]ifferent images satisfying the statutory criteria are merely different means"). Although the jury was required to be unanimous on the bottom line—that the defendant possessed a minimum of fifty visual depictions of child pornography—it need not have been unanimous as to the exact fifty images or category of sexually explicit conduct depicted in those images. See, e.g., *State* v. *Joseph V.*, supra, 345 Conn. 530 ("[A] jury must come to agreement on the principal facts underlying its verdict—what courts have tended to call the elements of the offense. But that requirement does not extend to subsidiary facts— what the [United States Supreme] Court has called brute facts." (Internal quotation marks omitted.)).

In the present case, the trial court made clear to the jury multiple times during its charge that its decision must be unanimous. The court explained that, "[w]hen

you reach a verdict, it must be *unanimous*; that is, one with which all of you agree." (Emphasis added.) At a different time, it explained, "[i]f you unanimously find that the state has proved all the elements of possession of child pornography in the first degree as I've instructed you beyond a reasonable doubt, your verdict would be guilty to count one, possession of child pornography in the first degree." This was sufficient for present purposes. Although the defendant further argues that fundamental fairness warrants treating each image and the definitions of sexually explicit conduct as separate elements, none of the *Schad* considerations weighs in favor of treating them in that manner. We therefore conclude that the sole count against him provided alternative ways to violate the statute and was not duplicitous. A specific unanimity instruction was not required.[13]

B

Relying on *Stromberg* v. *California*, supra, 283 U.S. 359, the defendant next claims that, in failing to give the requested unanimity instruction as to the fifty images and accepting a general verdict, the trial court committed reversible constitutional error. The defendant argues that, if this court concludes that any of the fifty-seven images do not meet the definition of child pornography, "there [would be] no way of knowing if

---

[13] The defendant appears to argue that his claim is also one of unanimity as to instances of conduct. Unanimity as to instances of conduct occurs when a defendant is charged in a single count with having violated a single statutory provision, subsection, or clause on multiple, separate occasions. *State* v. *Joseph V.*, supra, 345 Conn. 531. The charge against the defendant, however, was not premised on multiple, separate instances of conduct. Rather, the state charged and adduced evidence that the defendant possessed fifty or more images of child pornography on one single date. The state's substitute information provided that, "on or about July 29, 2020, in the city of New Britain, [the defendant] did knowingly possess fifty . . . or more visual depictions of child pornography, in violation of . . . § 53a-196d (a) (1)." Therefore, the defendant's purported unanimity as to instances of conduct claim lacks merit.

all or some of the six jurors counted those images to be included in the [fifty] or more images their verdict was based on" and that *Stromberg* would mandate that his conviction be set aside. We disagree.

In *Stromberg*, the United States Supreme Court addressed the validity of a general verdict that rested on an instruction that the defendant could be found guilty of displaying a red flag as "a sign, symbol, or emblem of opposition to organized government, or [as] an invitation or stimulus to anarchistic action, or as an aid to propaganda that is of a seditious character . . . ." (Internal quotation marks omitted.) *Stromberg* v. *California*, supra, 283 U.S. 363. After concluding that the first clause of the instruction proscribed constitutionally protected conduct, the court concluded that the defendant's conviction must be reversed because "it [was] impossible to say under which clause of the [instruction] the conviction was obtained." Id., 368–70. In *Yates* v. *United States*, 354 U.S. 298, 312, 77 S. Ct. 1064, 1 L. Ed. 2d 1356 (1957), overruled on other grounds by *Burks* v. *United States*, 437 U.S. 1, 98 S. Ct. 2141, 57 L. Ed. 2d 1 (1978), the court extended this reasoning to a conviction resting on multiple theories of guilt when one of those theories is not unconstitutional but is otherwise legally flawed. See, e.g., *State* v. *Carter*, 350 Conn. 43, 54–55, 323 A.3d 297 (2024) (court's legal error in instructing jury on definition of deadly weapon precluded application of general verdict rule).[14]

Following *Stromberg* and *Yates*, however, the United States Supreme Court has explained that, "[w]hen . . . jurors have been left the option of relying [on] a legally inadequate theory, there is no reason to think that their own intelligence and expertise will save them from that

---

[14] Notably, *Stromberg* and *Yates* were decided before the United States Supreme Court concluded, in *Chapman* v. *California*, 386 U.S. 18, 21–22, 87 S. Ct. 824, 17 L. Ed. 2d 705 (1967), that constitutional errors can be harmless.

error. Quite the opposite is true, however, when they have been left the option of relying [on] a factually inadequate theory, since jurors *are* well equipped to analyze the evidence . . . ." (Citation omitted; emphasis in original.) *Griffin* v. *United States*, 502 U.S. 46, 59, 112 S. Ct. 466, 116 L. Ed. 2d 371 (1991). The court added, "[i]t is one thing to negate a verdict that, while supported by evidence, may have been based on an erroneous view of the law; it is another to do so merely on the chance—remote, it seems to us—that the jury convicted on a ground that was not supported by adequate evidence when there existed alternative grounds for which the evidence was sufficient." (Internal quotation marks omitted.) Id. 59–60; see also, e.g., *State* v. *Turner*, 340 Conn. 447, 457, 264 A.3d 551 (2021) ("[t]he inclusion of a legally valid but factually unsupported theory of liability in the instructions does not implicate the due process rights of the defendant because a jury is well equipped to differentiate between factually supported and factually unsupported theories of guilt"); *State* v. *Chapman*, 229 Conn. 529, 540, 643 A.2d 1213 (1994) ("[t]he jurors . . . were in a position to be able to evaluate the testimony presented and to assess whether the charged theory was supported by the evidence").

In the present case, neither the statute nor the legal theory presented to the jury was unconstitutional or otherwise legally infirm. The trial court's instruction on the definition of child pornography, including its definition of sexually explicit conduct, was correct under Connecticut law. And the state's theory was simply that the defendant possessed fifty or more still images of child pornography. We concluded in part I A of this opinion that two images likely did not depict a lascivious exhibition and, therefore, could not be used to support the defendant's conviction, not that the statute or legal theory was constitutionally or legally flawed.

In light of *Griffin*, we conclude that a conviction by general verdict for the possession of fifty or more visual depictions of child pornography need not be set aside if a court determines that some images considered by the jury do not depict sexually explicit conduct (in this case, a lascivious exhibition of the genitals or pubic area), so long as the evidence is ultimately sufficient to support the conviction. The jury in this case was required to determine whether *fifty or more* of the fifty-seven images introduced by the state constituted sexually explicit conduct on the basis of the definitions and explanation given by the trial court. The evidence was legally and factually sufficient with respect to at least fifty-five of the fifty-seven images, bringing the number of visual depictions of child pornography over the threshold of fifty or more. The fact that two of the images did not sufficiently depict a lascivious exhibition does not provide a proper basis for setting aside the defendant's conviction.

## III

The defendant's final claim is that the trial court abused its discretion in admitting two of the state's exhibits that showed the file names of two images that had been deleted from the defendant's cell phone. He argues that any probative value of those exhibits was outweighed by their prejudicial effect. We are not persuaded.

The following additional procedural history is relevant to the defendant's claim. During the state's case-in-chief, the prosecutor introduced testimony from Elizabeth Arpin, a forensic science examiner in the state's computer crimes unit. She testified that she used Cellebrite software to extract data files, including deleted data, from the defendant's cell phone.[15] The fifty-seven

---

[15] "[A] Cellebrite [e]xtraction [r]eport lists all call logs, contacts, text messages, and data files on a [cell] phone at the time of the extraction, which is conducted using Cellebrite technology." (Internal quotation marks omitted.) *State* v. *Michael R.*, supra, 346 Conn. 441 n.9.

images of alleged child pornography were admitted through Arpin, who testified that the images were found in a "download" folder in the internal memory of the phone.

After defense counsel's cross-examination of Arpin, the prosecutor sought to offer, on redirect examination, exhibits 107 through 111 as other acts of the defendant to prove knowledge, possession, and identity. Outside the presence of the jury, the prosecutor explained that the proffered exhibits were not images, as those had been deleted but, rather, were file names of deleted images that had been on the phone associated with the defendant's email address. Defense counsel objected to their admission on the grounds that they were highly prejudicial to the defendant and offered no probative value. He further argued that the exhibits were cumulative of other evidence already introduced by the state.

The trial court ruled that the proffered exhibits were relevant and material to proving identity, knowledge, and possession. The court further acknowledged that the exhibits were relevant to rebutting a claim of mistake, or lack of knowledge, that defense counsel raised during cross-examination by asking questions regarding the chain of custody and the ability of third parties to alter data on the phone. Nevertheless, the court only permitted the state to introduce exhibits 108 and 109 into evidence. The court determined that those two images were sufficient to enable the state to present its case, while reducing any chance that the exhibits would unduly arouse the emotions of the jurors.

The prosecutor proceeded to introduce exhibits 108 and 109 through Arpin. She testified that exhibits 108 and 109 were printouts of a portion of the Cellebrite report that showed information about two images that were deleted from the defendant's phone. The information contained in exhibit 108 shows that the deleted

image was named "(Toddlerboy) Raamat 2Yo Boy Toddler Pedo 1 With Sound" and located in the "Google Photos" application on the phone associated with the defendant's email address. As to exhibit 109, the deleted image was named "(Toddlerboy) Raamat 2Yo Boy Toddler Pedo 2 With Sound" and again located in the Google Photos application on the phone associated with the defendant's email address.

Turning to the relevant legal principles and our standard of review, we have explained that, in general, "evidence of prior misconduct is inadmissible to prove that a criminal defendant is guilty of the crime of which the defendant is accused." (Internal quotation marks omitted.) *State* v. *Raynor*, 337 Conn. 527, 561, 254 A.3d 874 (2020). "Such evidence cannot be used to suggest that the defendant has a bad character or a propensity for criminal behavior." (Internal quotation marks omitted.) *State* v. *Delacruz-Gomez*, 350 Conn. 19, 27, 323 A.3d 308 (2024). "We have developed a two part test to determine the admissibility of such evidence. First, the evidence must be relevant and material to at least one of the circumstances encompassed by the exceptions [set forth in § 4-5 (c) of the Connecticut Code of Evidence]." (Internal quotation marks omitted.) Id. Section 4-5 (c) provides that evidence of other crimes, wrongs or acts is admissible "to prove intent, identity, malice, motive, common plan or scheme, absence of mistake or accident, knowledge, a system of criminal activity, or an element of the crime, or to corroborate crucial prosecution testimony." "Second, the probative value of the evidence must outweigh its prejudicial effect." (Internal quotation marks omitted.) *State* v. *Delacruz-Gomez*, supra, 27. "Because of the difficulties inherent in this balancing process, the trial court's decision will be reversed only whe[n] abuse of discretion is manifest or whe[n] an injustice appears to have been done. . . . On review by this court, therefore, every

reasonable presumption should be given in favor of the trial court's ruling." (Internal quotation marks omitted.) *State* v. *Patterson*, 344 Conn. 281, 291, 278 A.3d 1044 (2022).

The evidence of the names of the deleted images and the evidence that the images were associated with the defendant's personal email address were clearly relevant to and probative of the issue of whether the defendant knew that he possessed child pornography on his phone. Defense counsel repeatedly questioned the defendant's knowledge by suggesting that the defendant's phone had been tampered with and that someone else had put the images on the phone. Specifically, defense counsel elicited testimony from Edward G. Wolcott, the defendant's friend, with whom the defendant had left his phone just before his arrest, about Wolcott's accessing the defendant's cell phone and downloading a special utility program to view images on the phone.[16] Defense counsel also elicited testimony from Wolcott about others in Wolcott's household having access to the phone at certain times until he turned the phone over to the police. This questioning was in addition to the questioning of Arpin, who testified that third parties could potentially add, alter, or delete files from the phone.[17]

---

[16] The evidence adduced at trial reveals that the defendant and Wolcott were running errands on July 29, 2020. Wolcott dropped the defendant off at a meeting and waited for him in the car. Wolcott testified that the defendant had left his cell phone on the center console of Wolcott's car when the defendant went into the meeting. Shortly thereafter, the defendant called Wolcott and informed him that he had been arrested, that the police had searched his house with a warrant, and that the police wanted to search the center console of Wolcott's car. The defendant asked Wolcott to hold onto his cell phone, which Wolcott did, until the police contacted him and asked him to turn over the phone.

[17] During closing arguments, defense counsel argued that Wolcott possessed the phone for approximately ten days before the police obtained the phone from him and, during that time, removed the SD card from the phone and used a special utility program to open files on it. He argued that there was no evidence of how the images got on the phone and that anyone could have put them there.

Although the defendant maintains that the admission of the two deleted file names was prejudicial, he has not demonstrated unfair prejudicial impact to counter the substantial probative value of the exhibits. The deleted files associated with the defendant's personal email address, which are indicative that the defendant had knowingly possessed child pornography, cannot be said to be unduly prejudicial in the context of this case, in which the jury had to view actual images of child pornography. See, e.g., *State* v. *Campbell*, 328 Conn. 444, 522–23, 180 A.3d 882 (2018) ("prejudicial impact of uncharged misconduct evidence is assessed in light of its relative 'viciousness' in comparison with the charged conduct").

Furthermore, the trial court exhibited appropriate sensitivity to the potential for unfair prejudice when it allowed the state to introduce only two of its five proposed exhibits. The court endeavored to balance the interests by excluding the state's exhibits that contained arguably more provocative file names than the ones admitted into evidence.[18] The court's limiting instruction also mitigated any potential for undue prejudice from the admission of the two exhibits. It made clear that the jury could not consider the two exhibits as establishing a predisposition on the part of the defendant to commit the crime charged or to demonstrate a criminal propensity. The exhibits could be considered, the court instructed, only for the purposes for which they were admitted, "knowledge, possession and identity."

In sum, because the probative value of the evidence was strong and the trial court took considerable measures to mitigate any potential undue prejudice, we

---

[18] Two of the excluded exhibits, for instance, bore the file names "(Toddlerboy) Raamat 2Yo Boy Toddler urinates in a mouth," and "4yo cute brown hair boy playes with mns cock in the bath awesome home video."

conclude that the trial court did not abuse its discretion in admitting the two exhibits.

The judgment is affirmed.

In this opinion the other justices concurred.